### No. 12,414.

MALVINA KONRAD VS. UNION CASUALTY AND SURETY CO., OF ST. LOUIS, MO.

The action was brought upon a policy of accident insurance.

*Notice of Death.*—Plaintiff, under the circumstances of the case, gave notice of death sufficiently in time.

*Proof of Cause of Death.*—The policy did *not* require as a condition precedent to recovery by the beneficiary, proof positive and direct of the cause of death, as is required in some casualty and surety companies. Proof not conclusive that death was result of natural causes or design.

There was enough to prove: death was the result of accident rather than natural causes or design.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

---

*Rogers & Dodds* for Plaintiff, Appellee:

Cited: Kentzler vs. American Mutual Accident Association, 60 N. W. 1002; Anoka Lumber Co. vs. Fidelity and Casualty Co., 65 N. W. 354; Leman vs. Manhattan Life Ins. Co., 46 An. 1189; May on Insurance, Vol. 1, par. 325; Malory vs. Travellers Ins. Co., 47 N. Y. 410; 7 An. Rep. 410; 133 Ill. 556.

---

*Howe, Spencer & Cocke* for Defendant, Appellant:

Cited: Sherwood vs. Ins. Co., 10 Hun. (N. Y.) 593; Railway Ass. Co. vs. Burwell, 44 Ind. 464; 127 U. S. 661; Merritt vs. Preferred Accident Ins. Co., 98 Mich. 338; Tennant vs. Travellers Ins. Co., 31 Fed. Rep., p. 322.

Argued and submitted March. 18, 1897.

Opinion handed down March 29, 1897.

Rehearing refused April 12, 1897.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff, beneficiary of a policy of accident insurance, brought this action to recover the amount of the policy.

The grounds of defence are three:

First—No notice of death was served within the time contemplated by the policy.

Second—A special and general denial that the death of the assured was caused by any accident covered by the policy.

Third—That the assured committed suicide.

The policy was issued in October, 1895.  It covered bodily injuries sustained through external violent and accidental means, and stipulated that if death resulted within ninety days from such injuries, independently of all other causes, the company would pay the amount of the policy to plaintiff, who was his sister.  The insured and insurer agreed that immediate written notice would be given to the general agency issuing the policy or to the company at St. Louis, Missouri, on blanks provided for the purpose, of any accident and injury for which a claim is to be made, with full particulars; that affirmative proof of death or loss of limbs, or of sight, or of duration of disability would be furnished to the company within two months from time of death, or of loss of limb, or of sight, or of termination of disability.

The insured, Edward B. Konrad, left West End on the morning of the 24th of February, 1896, in a skiff.  A sailor from the shore of the basin pleasantly remarked to the young man, who was leisurely and awkwardly pulling the boat to the lake, " that he was not much of a hand" at rowing a boat.  To this he made some answer, and began to pull as one accustomed to rowing.  He said something about the weather, and asked where the best fishing banks were, and went out of the basin and turned westward into the lake.

About half past 9 of the day before mentioned, another witness saw a young man in his shirt sleeves, his hat off, rowing toward West End.   " He was pulling a good ordinary stroke," said the witness.  He was about two miles from the main shore.   It had been

quite foggy during the early morning. It was clearing off when witness passed him. Subsequently, during the forenoon of the day, a trapper, on his return from his usual daily work, saw a skiff on the lake, about a mile from West End. The young man's coat and hat were in the skiff, and a small can of bait. When the skiff was found no one believed among the fishermen at the lake that the young man was drowned; it was thought that he had gotten out of his boat and had gone ashore; no search was made for him on that day. About fifteen days afterward his body was found floating in the lake, about four miles from West End.

The evidence does not indicate that prior to the date of his death the assured had suicidal intent.

The certificate of the coroner stated that drowning was the cause of death. The plaintiff forwarded her affidavit to the defendant company, stating that she was not aware until April 20, 1896, that the deceased held a policy in the defendant company.

In answer to plaintiff's demand of payment, the agent wrote to the plaintiff informing her that on account of delay in giving notice of death the company disclaimed liability; in other words, that the delay was in violation of the policy contract.

The District Court gave judgment in favor of the plaintiff.

The defendant took a suspensive appeal.

The first ground of defence is that immediate notice of death was a condition precedent to recovery and that it was no excuse in this respect that the beneficiary was not aware of the policy.

The verity of plaintiff's affidavit, in which she declared that she did not know of the policy in her favor, and that she only found it the day prior to the date of notice, is not questioned.

The principles governing fire insurance companies in the matter of the nullity of the contract of insurance, the forfeiture of the policy and conditions precedent to a recovery upon a policy apply as well to a contract of insurance against accident; except if there is some modification or change in the stipulations.

The time of notice is specified in fire insurance policies. The language of the condition usually reads, as in the case of life or accident policies "immediate notice to be given." The weight of the decisions, as we have read them, does not, under all circumstances, require immediate notice as a precedent condition. The words "immediate" and "forthwith," "as soon as possible" used in

Konrad vs. Casualty and Surety Co.

policies are not always taken literally.    It will meet the require-
ment, says May, in his work on Insurance, Sec. 462, "if given with
due diligence under the circumstances of the case and without un-
necessary and unreasonable delay."    "To give the word a literal
interpretation would in most cases strip the insured of all hope of
indemnity and policies of insurance would become engines of fraud."

We are informed by this text writer that notice within eight days
after the fire, and within five days after it come to the knowledge of
the insured has been held reasonable.    In another case that notice
was reasonable where the fire happened on the tenth and notice of
loss, dated the eleventh, reached the insurance office on the fifteenth.

But that a delay of four months in one case;   of eleven days in
another, there being no sufficient excuse therefor, has been held to
be unreasonable.    To decide that one was not fully diligent and that
she lost her right as a beneficiary, because she did not give notice of
a policy of which she knew nothing, would be more strict and exigent
than, in our opinion, the language of the policy required.    There
was timely notice given after the fact of insurance came to the
knowledge of the plaintiff.    The delay in finding the policy was not
strange and unexplainable.    On the contrary, it appears to have been
entirely consistent with good faith.

The case of the Provident Life Insurance Company vs. Baum, 29
Indiana Rep., pp. 236-241, was an action on an accident insurance
policy.    The court said in answer to the complaint that notice was
not given in time, that the law, as stated in Angell on Fire and Life
Insurance, is that "there must be no unnecessary delay, nothing
which the law calls laches."

Applying the interpretation to the contract in case of notice to the
underwriters of a loss by fire, the court held that the terms "forth-
with" and "as soon as possible" in the policy of insurance, after
the accident, are not to be taken in a severe literal sense, but mean
with due diligence or without unnecessary procrastination or delay.

We pass to the next objection urged by the defendant that the
plaintiff can not recover except upon some affirmative proof that the
death of Edward B. Konrad was caused by an accident insured
against and covered by the policy—that is, by external, violent and
accidental means, of which, the defendant contends, the record con-
tains no proof.

This ground of defence rendered it necessary to carefully consider

the conditions of the agreements endorsed on the reverse of the policy. It devolved upon the insured, in case of accident not resulting in death, to furnish affirmative proof of loss of limb or of sight. In case of death it was incumbent upon the beneficiary to furnish affirmative proof of death, but direct and positive proof that death or personal injury was caused by external violence and accidental means was not one of the conditions. This question was left to a decision under the rules of evidence. The necessity of giving notice of death does not include notice of the cause of death, nor does the necessity of proving death affirmatively cover affirmative proof of the causes of death. The insurance, it is true, was against bodily injuries sustained through external, violent and accidental means. These may be considered established, although a plaintiff may not have furnished direct and positive proof of the facts as required by some of the policies issued by some casualty and surety companies. If it be manifest that death was neither occasioned by natural causes nor by the deceased himself, it at once becomes evident that the " violent and accidental " must be considered as cause.

We are brought to the defence that the assured committed suicide and that death by suicide was expected from the risk covered by the policy.

Death by accident is defined an unexpected event not according to the usual course of things; applying this definition it has been held that where a person is drowned while bathing it is accidental death, although no proof is offered of the circumstances.

Trew vs. Railway Passenger Association, 6 Hurlstone & Norman, 839. Also where the insured fell in a fit in shallow water and was drowned it was held to be a death by external and material causes.

In the case in hand there is no direct proof of the cause of death. The indications are that the insured was drowned.

Without more proof it would be difficult to conclude that he deliberately destroyed himself. The natural presumption arising from the love of life of itself negatives all idea of suicide. The one destroying himself is guilty of a moral crime with which his memory should not be made to suffer, unless proof is evident.

We conclude that the evidence does not sustain the defence that he committed suicide.

In the second place that he did not die a natural death.

The good health of the assured and the circumstances preceding

the death do not tend to establish the theory that death resulted from natural causes.

It may be logically inferred, indeed it must be inferred, as it was not a natural death, or a suicide, that the death was caused by external violence and accidental means. There was enough to prove that death was the result of accident rather than design or natural causes.

It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed.