Samuel G. Thom was killed by his son, Emmett Thom, on February 6th, 1935. The Metropolitan Life Insurance Company, which had issued two policies of industrial life insurance aggregating $960, paid the face value of the policies to Thom's widow, Mrs. Elizabeth Kerner Thom, the beneficiary. The policies contained a clause providing that double indemnity should be paid in the event of accidental death of the insured. The insurance company declined to pay anything more than their face value, hence this suit.
The provision relating to double indemnity reads as follows:
"Upon receipt of due proof that the insured, after attaining age 15 and prior to attaining age 70, has sustained, after the date of this policy, bodily injuries, solely through external, violent and accidental means, resulting, directly and independently of all other causes, in the death of the insured within ninety days from the date of such bodily injuries while this policy is in force, and while premiums are not in default beyond the grace period specified in this policy, the company will pay in addition to any other sums due under this policy and subject to the provisions of this policy an accidental death benefit equal to the face amount of insurance then payable at death, except that if such bodily injuries are sustained by the insured while employed in or on the premises of any open pit or underground mine, or are sustained by the insured while on or about the premises or right of way of any railroad company while the insured is following the occupation of gang, track, or roadway laborer, track walker, yard, freight or mixed train brakeman or flagman, then the accidental death benefit shall be only one-half of the face amount of insurance then payable at death. In any case, the amount of the accidental death benefit shall be reduced by the amount of any disability benefit which has become payable under this policy on account of the same injuries as resulted in death.
"No accidental death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly, or wholly *Page 270 
or partially, by disease, or by bodily or mental infirmity, nor if death results from bodily injuries sustained while participating in aviation or aeronautics, or while the insured is in military or naval service in time of war."
There was judgment below in favor of the plaintiff as prayed for and defendant has appealed.
The question presented is whether the assured met his death "solely through external, violent and accidental means, resulting directly and independently of all other causes."
The record discloses the following facts which are not disputed:
Samuel Thom was, upon occasion, a heavy drinker and, when intoxicated, was very disagreeable and irrascible. On the day of his death he returned to his home about noon. He had been drinking steadily since the night before when, before retiring, he had informed Mrs. Thom that "he was going to kill the whole family the next day, wipe out the whole family". As he entered the house, Mrs. Thom, who had been engaged in cooking his dinner, attempted to appease him by serving it immediately, but met with no success. He grabbed her, threatened to choke her and struck at her face, but due to his unsteadiness, he missed. She ran to a retreat under the house, where she was accustomed to go on similar occasions, and which she had previously prepared with some degree of comfort, by having a mattress placed upon the ground. When Thom could not find his wife he asked his son, Emmett, who was in the yard, where she was. Emmett, believing that his father might do her bodily harm, refused to tell him. He became enraged, ran into the house and came out again with a pistol in his hand, chased his son around the house several times and, on one occasion, dropped the pistol which the boy picked up. The chase continued out of the yard and into the street and towards the Mississippi River, some four or five city blocks from the Thom home, and upon the levee when, as Thom neared his boy, he pointed a revolver at him (in some way Thom had secured another revolver) whereupon Emmett shot his father three times with the pistol which he had picked up.
We freely confess that the sordid circumstances surrounding the death of Thom have enlisted our sympathy for his much abused widow and her patricidal son, whose innocent hands have been forever stained with the blood of his besotted sire. However that may be, the question for our decision is whether Mrs. Thom should recover under the contract of insurance which we are called upon to interpret.
The contention of the plaintiff is that the killing of Thom, by his son, was accidental if it might be said, from the circumstances, that he could not reasonably expect to be killed no matter how intentional the killing was on the part of the boy because, as counsel says, "he could not anticipate that death would result from an altercation with his seventeen year old son who, as far as he knew, was unarmed."
We are referred to Jenkin v. Pacific Mutual Life Ins. Co.,131 Cal. 121, 63 P. 180; Konrad v. Union Casualty Surety Company, 49 La.Ann. 636, 637, 21 So. 721; Meadows v. Pacific Mutual Insurance Company, 129 Mo. 76, 31 S.W. 578, 50 Am.St.Rep. 427; Kling v. Masons' Fraternal Accident Association,104 La. 763, 29 So. 332; Martin v. Mutual Life Insurance Company,106 W. Va. 533, 146 S.E. 53, and a number of others which, for the most part, relate to the question of the burden of proof which is said to rest upon the insurance company, which makes the defense after the plaintiff had introduced proof to show that the death of the insured was by external and violent means. These cases are not apposite here since all the facts surrounding the killing of Thom are proven and not in dispute.
In the case of Employers' Indemnity Corporation v. Grant, 6 Cir., 271 F. 136, 139, 20 A.L.R. 1118, 1123, plaintiff directs our attention to the following language: "In * * * cases * * * [where] the insured met his death, as a result of an intentional and designed killing of some third person, and if such killing was not the direct result of misconduct of the deceased, or was unforeseen and not reasonably to be anticipated by him, then his death is held to be the result of external, violent, and accidental means."
Counsel also calls attention to the following language used by the court in Occidental Life Insurance Company v. Holcomb, 5 Cir., 10 F.2d 125, 127, where it was said:
"It may be conceded that under certain circumstances an unlawful killing of the insured by another is to be considered *Page 271 
accidental. The rule as laid down by the weight of authority, and * * * may be stated as follows:
"Where the insured is innocent of aggression or wrongdoing, and is killed in an encounter with another, his death is considered accidental, within the meaning of the usual accident policy."
And to Hutchcraft's Ex'r v. Travelers' Insurance Company,87 Ky. 300, 8 S.W. 570, 571, 10 Ky.Law Rep. 260, 12 Am.St.Rep. 484, wherein the following appears: "So, also, we think, if one person intentionally injures another, which was not the result of a rencounter or the misconduct of the latter, but was unforeseen by him, such injury as to the latter, although intentionally inflicted by the former, would be accidental."
In Franchebois v. New York Life Insurance Company, 1930,171 La. 358, 131 So. 46, 47, 48, a case relied upon by both counsel for appellant and appellee, our Supreme Court said:
"It is well established that where the insured is intentionally injured by another, and the injury is not the result of misconduct or an assault by the insured, but is unforeseen, in so far as he is concerned, the injury is accidental within the meaning of an accident policy, insuring one against injury through external, violent, and accidental cause. See authorities cited in annotation to Employers' Indemnity Corporation v. Grant, 20 A.L.R. 1123.
"In the case before us it is urged by plaintiffs that the insured was killed while acting in self-defense, and therefore that his death was occasioned by accidental cause within the meaning of the policies. We find, however, that he was not acting in self-defense, but that, when the facts are analyzed, it appears that he was, in reality, the aggressor in the difficulty on the day he met his death. To constitute self-defense, in a homicide case there must be an actual attack, hostile demonstration, or overt act of such nature as to afford reasonable ground for the belief that the subject of the attack or demonstration is in danger of losing his life or of receiving great bodily harm, and that the killing of the person making the attack or hostile demonstration is necessary to avert the danger.
* * * * *
"Our conclusion is that the insured was the aggressor and by his own act precipitated the difficulty which resulted in his death. Therefore, his beneficiaries cannot successfully urge that, within the meaning of the policies, the insured's death was brought about by accidental cause."
See, also, Barham v. State Life Insurance Company of Indiana, La.App., Second Circuit 1931, 17 La.App. 253, 135 So. 730; Campbell v. Metropolitan Casualty Insurance Company, La.App., First Circuit 1937, 176 So. 233.
There is no question but what Thom was the aggressor and were it not for the fact that he was pursuing his seventeen year old son, no plausible reason could have been advanced for the proposition that he did not contemplate the fatal ending to the affair, but even a seventeen year old boy and a son need not, under the strictest sense of filial duty, calmly submit to being murdered at the hands of a drunken father who had threatened to kill his entire family.
We find no authority for the proposition that the beneficiary of an aggressor may recover on an accident policy when the circumstances do not warrant a belief that the quarrel would end fatally, but if there are such holdings, they are inappropriate to the facts developed here. Thom could not expect his son to submit to extermination even at his hands without an effort to preserve his life, and even though he believed his son to be unarmed, he might have reasonably assumed that in his extremity other means might be employed by the boy besides the use of firearms to protect himself, such as sticks, stones or other heavy objects, which might be casually present upon the street or levee.
The cases which hold that an individual who is intentionally killed nevertheless meets an accidental death, within the meaning of an accident policy, if he was not the aggressor in the quarrel, go far enough and, without criticising those cases, we unhesitatingly say that there should be no extension of this doctrine so as to include an aggressor, who assaults his opponent with a deadly weapon, as was the case here.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed, and it is now ordered that there be judgment in favor of the defendant dismissing plaintiff's suit at her cost.
Reversed. *Page 272