The lower court has set forth the issues, analyzed the testimony and determined the case in the following well-prepared opinion:
"The plaintiff, Mrs. Florence Helen Lafield, is the beneficiary named in a policy of insurance issued by the defendant company on the life of her husband, Joseph H. Lafield, with a face value of $1,000. The insured died on December 30, 1939, as a result of a bullet wound inflicted by one Milton Brown on December 23, 1939.
"The defendant promptly paid the face value of the policy but denied liability under the double indemnity provisions thereof. This suit is brought to recover the additional sum of $1,000, together with interest at the rate of 6% from January 5, 1940.
"The provisions of the policy with reference to the question of double indemnity are as follows:
"`Upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death occurred within sixty days after sustaining such injury.
"`This Double Indemnity benefit will not apply if the Insured's death resulted from self-destruction, whether sane or insane; From Any Violation of Law By the Insured; from Military or Naval Service in time of War; from a state of war or insurrection; from engaging in submarine or aeronautic operations; from physical or mental infirmity; or directly or indirectly from illness or disease of any kind. The Company shall have the right and opportunity to examine the body, *Page 249 
and to make an autopsy unless prohibited by law.'
"The tragedy in this case occurred on the principal street of Coushatta, Louisiana, on the afternoon of December 23, 1939. There is no testimony in the record which would even indicate the cause of the trouble between Messrs. Lafield and Brown. They were seen wrestling in a vacant lot between McFerrin's Store and the Brown Motor Company. During this struggle Lafield cut Brown on the arm and side with a pocket knife. At the conclusion of this struggle or fight, Lafield started walking toward his car which was parked in front of McFerrin's Store. He was followed by Brown, who was shown to have been some eight or ten feet back of Mr. Lafield. As Lafield reached a point about midways of his car, Brown reached the curb and fired one shot into Lafield's back. As the shot was fired Brown made the following statement: `Damn you, you cannot cut me!'
"Henry Hanks, a witness for the defendant, testified that just prior to the shooting he heard Mr. Lafield say: `If I can't cut you down, I will shoot you down'. This statement was not supported by any other witness. Several reputable and reliable citizens were within a few feet of the parties at the time of the shooting and while they heard the statement of Mr. Brown, no other witness heard the purported statement as testified to by the witness Hanks. We were not impressed by this witness and, without some corroboration, we must reject his testimony as to the alleged statement of Mr. Lafield. Mr. Brown, who was summoned by the defendant and who was present in court, was not placed on the stand and no reason was given for not calling this witness.
"Counsel for plaintiff and defendant each take the position that the other has the burden of proof. The question, obviously, is very important in deciding this case for the reason that many factors are unexplained and left to conjecture.
"The correct rule, we think, is that the plaintiff must sustain the burden of proof in establishing that the death was the result of an accident or accidental means. When this fact is established under the first paragraph of the double indemnity provisions of the policy, then the burden shifts and it becomes necessary for the insurance company to show by a preponderance of the evidence that the loss arose from a cause for which it is not liable or from a cause which limits its liability.
"In Beco v. Peoples Industrial Life Insurance Company, 9 La.App. 371, 119 So. 281, [282], the court said: `The contention that the deceased was engaged in a violation of law at the time he met his death, and that therefore the beneficiary should not recover * * * is a special defense, and the burden of proving it plainly rests upon the defendant.'
"The above quotation was cited with approval by the Supreme Court of Louisiana in the case of Cutitto v. Metropolitan Life Insurance Company, 185 La. 161, 168 So. 761, [762]. In the Cutitto case the widow was seeking to recover under the double indemnity clauses of the policy providing for such payment in the event of death from accidental means within sixty days after injury. The policy provided that: `The indemnity provided for herein shall be payable only if the death of the Insured result in consequence of bodily injury effected solely through external, violent and accidental means, within sixty days after such injury, independently and exclusively of all other causes.'
"The defense offered by the Insurance Company was that the insured was killed by a Mrs. Ella Simoneaux, who was acting in self-defense. After reviewing the facts in this case and the jurisprudence on the question of the burden of proof, the court said in conclusion: `The burden of proving the special defense in this case then rested upon the defendant company which, in our opinion, has failed to sustain the special defense. Our conclusion is that Petta met his death by accidental means in accordance with the terms of the policies, and that his lawful widow, the beneficiary, should recover the double indemnity sued for by her in this case.'
"The rule adopted by our Supreme Court is also that followed in practically all states. The rule is stated in Couch on Insurance, as follows: `The apparent weight of authority is to the effect that where the undertaking is to pay in case of the death of or injury to the insured effected through external, violent and accidental means, etc., provided the death or injury shall not have produced by any of the various acts or causes specifically enumerated in the policy, the burden of proof that the death or the injury was caused by one of the excepted causes must be assumed and borne *Page 250 
by the insurer after the plaintiff has established the fact that the death or injury was the result of accident or accidental means.' Couch on Insurance, Vol. 8, Sec. 2217, p. 7173.
"The plaintiff has clearly established the fact that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause and that the death occurred within sixty days after sustaining the injury. It is admitted that the death resulted from a bullet wound inflicted by Milton Brown. The death was therefore not natural or self-inflicted.
"In Konrad v. Union Casualty Surety Company, 49 La.Ann. 636, 21 So. 721, [723], the court said: `If it be manifest that death was neither occasioned by natural causes nor by the deceased himself, it at once becomes evident that the "violent and accidental" must be considered as cause. * * * It may be logically inferred — indeed, it must be inferred, as it was not a natural death or a suicide — that the death was caused by external violence and accidental means.'
"For other authorities on this same question see cases cited by the court in the case of Cutitto v. Metropolitan Life Insurance Company, supra.
"The question then presented is whether the defendant has sustained the burden imposed upon it to establish that the death was due to a violation of the law and its liability limited thereby to the face value of the policy.
"In the case of Gilman v. New York Insurance Company,190 Ark. 379, 79 S.W.2d 78, [79], 97 A.L.R. 765, the court said: `It is also true that if the insured is killed by another in his necessary self-defense, then it cannot be said that his death was accidental within the meaning of the policy, and affords the insurer a complete defense to an action on the policy for accidental death. But the burden is upon the insurer to prove justification, and there is no presumption of law that the killing was for justification. If Walker had been on trial for the killing of Gilman, there would have been no presumption of justification in his favor.'
"We are without any clue in this record to determine who was the original aggressor in the difficulty or the cause of the trouble between Mr. Brown and Mr. Lafield. They were shown to have been engaged in a struggle, during which time Mr. Lafield secured a knife and cut Mr. Brown. The testimony fails to indicate whether the using of this knife under the circumstances was such as to make Mr. Lafield the aggressor even if Mr. Brown was the original aggressor. However, it is our opinion that even if Lafield became the aggressor as a result of the use of a knife to repel an assault or was the original assailant, the circumstances under which he was shot by Mr. Brown would not make the shooting legally justifiable, or in self-defense.
"It seems apparent that Lafield had retired from the fight. He was walking to the car where his wife and infant grandchild were sitting. No words were spoken by him. No overt act was being committed. Mr. Brown followed Mr. Lafield from the scene of the original difficulty to the point where the shot was fired. Just before firing he made the statement that clearly indicated that the shot was not fired in self-defense but rather because he had been cut by the deceased a few minutes before. The bullet entered Mr. Lafield's back and was fired when his back was to Mr. Brown.
"The sole question, therefore, is whether this killing was legally justifiable. If it was, then, of course, it would have resulted from a violation of the law by the insured and recovery by the beneficiary would necessarily be denied. In our opinion the defendant has failed to sustain the burden imposed on him to show that the death of the insured in this case resulted from a violation of the law under the terms of its policy.
"`The rule adopted in a number of cases is that, where the insured was the aggressor in a difficulty, the question whether his death, caused by the person assailed, was caused by a violation of the law, depends on whether the killing was legally justifiable. * * * But if the insured abandons his assault, and while in good faith retreating to avoid further difficulty, is killed by his adversary, the death is not in violation or attempted violation of any criminal law.' American Jurisprudence, Sec. 907, p. 693.
"We quote the following from Couch on Insurance: `And where one brings on a personal encounter with another, but abandons it, and while in good faith retreating to avoid further difficulty, and not for the *Page 251 
purpose of obtaining a vantage ground to renew it, is killed by his adversary, the death is not within the meaning of a policy exemption against liability for a death in violation, or attempted violation, of any criminal law. Likewise, where following a fist fight, the slayer leaves the scene of the quarrel but shortly returns, and without warning shoots from behind, the killing is accidental as to the insured, and cannot be regarded as the reasonable and probable result of a fight, even though the insured was the original aggressor therein. So the fact that the insured was the aggressor in a pistol fight does not preclude recovery, if he had retired from the conflict at the time a shot from a bystander caused his death.' 6 Couch on Insurance, Sec. 1241, p. 4539.
"The plaintiff prays for interest at the rate of 6% per annum from January 5, 1940, until paid. This claim is based on Act 17 of 1920, which provides as follows: `All life insurance companies doing business in this State, whether foreign or domestic, are hereby required to pay all death claims within sixty days from date of receipt of due proof of death and should they fail to do so without just cause, then policy will bear interest at the rate of six per cent. (6%) per annum from date of receipt of due proof of death until paid.'
"We cannot say, under the circumstances of this case, that the refusal of the defendant company to pay this claim was `without just cause' as contemplated by this statute.
"For the reasons assigned, there should be judgment in favor of the plaintiff, Mrs. Florence Helen Lafield, and against the defendant, New York Life Insurance Company, in the sum of $1,000, with legal interest from January 5, 1940, the date admitted by the defendant that due proof of this death was made."
The judgment was signed in accordance with the opinion and defendant is prosecuting this appeal therefrom. Plaintiff has answered the appeal praying that the rate of interest be increased from 5% to 6%, under authority of Act 17 of 1920. Appellant does not complain of the finding of facts by the lower court nor does it disagree with the general rule stated by the lower court on the question of burden of proof. However, it does disagree with the manner in which it was applied to the facts in this case.
We have given close consideration and study to the record as a whole, including the briefs of counsel, and are of the opinion the lower court has correctly disposed of all contentions made by appellant and appellee. We might add that, in our opinion, the record makes it clear that the shooting of decedent by Brown was an independent event from the original affray and was done in a revengeful spirit by Brown. His statement, — "You can't cut me and get away with it", or an expression of the same meaning, to our minds, is conclusive proof of the reason for the killing.
Before we could hold that decedent had not abandoned the encounter and was not retreating in good faith to avoid further encounter, we would have to assume facts upon which there is no testimony to justify the assumption. We would have to assume that decedent had a pistol or other dangerous weapon in his car and was going there for the purpose of securing such weapon. There is no evidence to support such an assumption. The original encounter was over and decedent had gotten the better of it, therefore, there was no reason for him to wish to continue it. He had left the place of the first encounter and was approaching the car where his wife and grandchild were seated. Brown followed him from the place of the original encounter to his car and shot him in the back. Regardless of whom the aggressor was at first, it is certain under the evidence that at the time decedent was shot he was not doing anything to justify Brown in shooting him.
The opinion and judgment of the lower court are correct, and it therefore follows that the judgment is affirmed, with costs.
TALIAFERRO and HAMITER, JJ., concur. *Page 252