**Ada Bell Brown HUGHES, Tutrix,**

v.

**STANDARD LIFE INSURANCE COM-
PANY OF INDIANA.**

Civ. A. No. 4694.

United States District Court
W. D. Louisiana, Shreveport Division.

March 16, 1956.

Rehearing Denied May 15, 1956.
See 140 F.Supp. 577.

Bethard & Bethard, Coushatta, La., for plaintiff.

Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendant.

DAWKINS, Jr., Chief Judge.

Tried to the Court without a jury, the action is for benefits claimed as due to plaintiff's minor son under a policy of life insurance issued to her husband by defendant. The suit began in the State

Court, and was removed here on grounds of diversity of citizenship.

The background facts are not in dispute, the sole controversy being whether the death of the insured, William Watson Hughes, comes within the double indemnity provision of the policy, reading as follows:

"Accidental Death Benefit

\* \* \* \* \*

"The Standard Life Insurance Company of Indiana \* \* \* (for an additional stated premium) \* \* \* Hereby Agrees to pay to the Beneficiary of record under said policy, in addition to the amount payable according to the terms of said policy, the sum of Three Thousand Dollars upon receipt, at the home office of the company, Indianapolis, Indiana, of due proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means, provided \* \* \* (5) that death shall not have been the result of self-destruction, whether sane or insane, or caused by or contributed to, directly or indirectly, or wholly, or partially, by disease, or by bodily or mental infirmity; \* \* \*."

The policy was issued on May 21, 1951, and named William W. Hughes, Jr., as beneficiary. It was in full force and effect when the insured came to his death on March 3, 1954. Defendant paid the $3,000 face amount of the policy, but denied liability for the "Accidental Death Benefit".

Mr. Hughes died as the result of drowning. There were no eyewitnesses to the accident. Suicide is not an issue.

He and a friend, Alvin Snead, had been fishing on Black Lake, in Red River Parish, Louisiana, since March 1, 1954. At about ten o'clock in the morning of March 3rd, he and Snead were fishing together when the latter decided to go to their camp, about one-quarter mile away, to prepare coffee. As he left Hughes, the latter was fishing from the lake bank, but had a boat nearby, moored perpendicular to the bank. Snead testified that Hughes frequently would fish in a standing position from the end of the boat away from the bank.

It was understood between them that when Snead had completed preparation of the coffee, he would call Hughes to join him. Snead went to the camp, prepared coffee, and called to Hughes, but received no answer. He then returned to the spot where Hughes had been, but did not see him, nor was there any answer to further calls. Assuming that Hughes was fishing at another place, out of hearing, Snead fished alone at various spots until about 4:00 P.M. Having failed to see or hear from Hughes in the interim, he became alarmed and summoned help.

A Deputy Sheriff and a number of private citizens came to the scene. One of the latter, M. F. Giddens, by probing with a pole in the water a few feet from the bank where Hughes last had been seen, found his body on the bottom, about 10 to 12 feet down, and brought it to the surface where it was recovered.

The Parish Coroner, Dr. L. S. Huckabay, was called to the scene where he examined the body. *Rigor mortis* had set in. Finding no outward signs of violence and observing that Hughes' lungs were filled with water, the Coroner concluded, and officially reported, that death had resulted from "accidental drowning". No autopsy was performed.

For a number of years before his death, Hughes had suffered from epilepsy, having been discharged from the Army on that account in 1944. His wife testified that he had seizures "about once a month"; whereas Giddens, who had known him for some years and was connected by marriage with the Hughes family, said that the attacks occurred "about once a week or oftener". Mrs. Hughes further stated that her husband had experienced a seizure the day before he and Snead left to go fishing, which would have been on February 28th, three days before the drowning. Total unconsciousness resulted with each seizure, lasting about five to ten minutes.

Plaintiff contends that, having shown her husband's death resulted from accidental drowning, there being a legal presumption against suicide, she has established a *prima facie* case, has satisfied the policy requirements and is entitled to judgment. Defendant, for its part, urges that plaintiff's suit must fail because she had the burden of proof and failed to sustain it by showing that her husband did not drown as the result of an epileptic fit. Plaintiff counters by saying that, under Louisiana law, such a burden of proof is not hers; and, indeed, in contending that the drowning occurred secondarily to an epileptic attack, defendant has asserted a special defense and bears the onus of establishing it by a preponderance of the evidence.

■■ After careful analysis of the applicable Louisiana jurisprudence, here binding upon us, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, we find plaintiff's position to be correct.

In Lafield v. New York Life Insurance Co., La.App.1942, 9 So.2d 248, the insured, whose life was covered by that defendant's policy, died from a bullet wound inflicted by one Brown. The insurer paid the face amount of the policy, but denied liability for double indemnity under a clause providing for such coverage in the following language:

"'"Upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental cause, * * *.

"'"This Double Indemnity benefit will not apply if the Insured's death resulted * * * From Any Violation of Law By the Insured; * * * * from physical or mental infirmity; or directly or indirectly from illness or disease of any kind. * * * *"'"

Shortly before he was shot, the insured and Brown had engaged in a fight, during which the insured cut the other with his knife. They then separated, and shortly thereafter the insured was shot in the back, while walking away from his assailant. The insurer defended on the ground that the double indemnity provision of the policy was not applicable because the insured was guilty of a "'"Violation of Law"'" by engaging in the fight. In disposing of the issues thus presented, the Court said:

"'Counsel for plaintiff and defendant each take the position that the other has the burden of proof. The question, obviously, is very important in deciding this case for the reason that many factors are unexplained and left to conjecture.

"'*The correct rule, we think, is that the plaintiff must sustain the burden of proof in establishing that the death was the result of an accident or accidental means. When this fact is established under the first paragraph of the double indemnity provisions of the policy, then the burden shifts and it becomes necessary for the insurance company to show by a preponderance of the evidence that the loss arose from a cause for which it is not liable or from a cause which limits its liability.*

"'In Beco v. Peoples Industrial Life Insurance Co., 9 La.App. 371, 119 So. 281, (282), the court said: "The contention that the deceased was engaged in a violation of law at the time he met his death, and that therefore the beneficiary should not recover * * * is *a special defense,* and the burden of proving it plainly rests upon the defendant."

"'The above quotation was cited with approval by the Supreme Court of Louisiana in the case of Cutitto v. Metropolitan Life Insurance Co., 185 La. 161, 168 So. 761, (762). In the Cutitto case the widow was seeking to recover under the double indemnity clauses of the policy providing for such payment in the event of death from accidental means within sixty days after in-

jury. The policy provided that: "The indemnity provided for herein shall be payable only if the death of the Insured result in consequence of bodily injury effected solely through external, violent and accidental means, within sixty days after such injury, independently and exclusively of all other causes."

" 'The defense offered by the Insurance Company was that the insured was killed by a Mrs. Ella Simoneaux, who was acting in self-defense. After reviewing the facts in this case and the jurisprudence on the question of the burden of proof, the court said in conclusion: *"The burden of proving the special defense in this case then rested upon the defendant company which, in our opinion, has failed to sustain the special defense.* Our conclusion is that Petta met his death by accidental means in accordance with the terms of the policies, and that his lawful widow, the beneficiary, should recover the double indemnity sued for by her in this case."

" 'The rule adopted by our Supreme Court is also that followed in practically all states. The rule is stated in Couch on Insurance, as follows: *"The apparent weight of authority is to the effect that where the undertaking is to pay in case of the death of or injury to the insured effected through external, violent and accidental means, etc.,* provided the death or injury shall not have [been] produced by any of the various acts or causes specifically enumerated in the policy, *the burden of proof that the death or the injury was caused by one of the excepted causes must be assumed and borne by the insurer after the plaintiff has established the fact that the death or injury was the result of accident or accidental means."* Couch on Insurance, Vol. 8, Sec. 2217, p. 7173.' " (Emphasis supplied.)

In Donnell v. Prudential Life Insurance Co. of America, La.App.1935, 160 So. 828, plaintiff's son, whose life was insured under three policies containing double indemnity provisions for accidental death, died as the result of drowning in a swimming pool. The clauses in question each provided, in pertinent part:

" 'Upon receipt of due proof that the Insured * * * has sustained bodily injury, solely through external, violent and accidental means * * * while this Policy is in force, * * * the Company will pay * * * an Accidental Death Benefit * * *.' "

The insured had suffered from epilepsy, with attendant seizures, for some time beforehand. The insurer contended that death did not result *solely* from accidental means, but due to drowning *and* convulsions. After reviewing the medical testimony, in which there was substantial conflict as to the cause of the drowning, the Court said:

"The record discloses that the decedent was subject to epileptic fits or convulsions, having been treated therefor at the Charity Hospital some months prior to his death, and this condition was confirmed by the examination of the brain at the autopsy. *There is absolutely nothing, however, aside from conjecture based on the decedent's medical history to show that he suffered an attack of epilepsy at the time he was drowned.* * * *

*"But assuming arguendo that* the record disclosed affirmatively that *Donnell had an epileptic fit or convulsion while in the pool and therefore drowned, can it be said that his death was not due solely to accidental means? We think not, because the fit or convulsion would not have contributed to the death, but only to the drowning, as distinguished from a heart attack or some other fatal occurrence which contributes directly to the death itself.*

*In other words, if a person, while in swimming, merely fainted or suffered what is commonly termed a cramp and while thus unconscious drowned, it could not be said that the death was not solely accidental, but in the case of a heart attack or some other fatal disease death would be brought about whether the attack occurred in the water or on shore and in such a case death is not solely accidental.*

"In the case of Konrad v. Union Casualty & Surety Co., 49 La.Ann. 636, 21 So. 721, 723, death by drowning was held to be caused 'by external, violent and accidental means.' There, the court said:

" ' "Death by accident" is defined as an unexpected event,—not according to the usual course of things. Applying this definition, it has been held, that where a person is drowned while bathing, it is accidental death, *although no proof is offered of the circumstances.*' " (Emphasis supplied.)

Defendant relies principally upon Franklin v. Mutual Life Insurance Co. of New York, 1950, 216 La. 1062, 45 So. 2d 624. There the double indemnity clause read as follows:

" 'The Double Indemnity will be paid upon receipt of the proof that the Insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, * * provided that the Double Indemnity shall not be payable if death resulted * * * directly or indirectly from disease or bodily or mental infirmity.' "

The insured had been suffering " * * from diabetes in its advanced stages, hypertension, and Bright's disease, and was drawing total and permanent disability benefits due to his physical condition from the defendant insurance company." He was found lying on a sidewalk, " * * * bleeding from the left ear and the nostrils, with a bruised and abraised condition of the chin, one hand, and the side of his head. He was taken to the hospital and remained totally unconscious for about 48 hours, and was conscious only momentarily from that time until his death * *." Although there was some unconvincing testimony tending to show that the insured might have died from a fractured skull, the Court found that:

" * * * we are fully convinced that the plaintiffs have not proved by a preponderance of the evidence that the injuries received were the *predominant* cause of death.

"Plaintiffs rely on Konrad v. Union Casualty & Surety Co. of St. Louis, Mo., 49 La.Ann. 636, 21 So. 721, and Donnell v. Prudential Life Insurance Co. of America, La.App., 160 So. 828. We have carefully read these cases and do not find that they support plaintiffs' claim to recover under the double indemnity provision." (Emphasis supplied.)

It will be noted particularly that the Court did not criticize, or overrule in any sense, the rules or logic of Konrad and Donnell. It simply stated that they were not applicable in the case before it. Lafield, Beco and Cutitto were not even mentioned. In the body of its opinion the Court reviewed earlier Louisiana jurisprudence as follows:

"This court in De Blieux v. Travelers Ins. Co., 185 La. 620, 170 So. 14, 16, had occasion to consider a similar double indemnity provision in a life insurance policy. The provision in that case, insofar as it is pertinent here, read: ' "If death should result from bodily injuries, effected *directly and independently of all other causes through external, violent and accidental means,* * * * which shall cause such injuries, and of which * * * there is a visible contusion or wound on the exterior of the body, provided, that such

(death) does not result, directly or indirectly, from diseases in any form, defendant will pay on receipt of due proof thereof * * *.'" (Italics ours.) In the cited case this court quoted at length and with approval from the case of Carnelious v. Louisiana Industrial Life Ins. Co., 18 La.App. 739, 138 So. 533, 535. In the Carnelious case, in answer to the insurance company's contention that no recovery could be had because the accident must be the sole and independent cause of the disability, the court said:

"'* * * Our understanding of the meaning of this clause, as interpreted by the courts generally, is that it suffices if the cause of injury or death be the efficient or *predominant cause.* The phrase "resulting directly, independently and exclusively in death," refers to the efficient, or, as some courts speak of it, the *predominant cause of death at the time it occurs.* Illinois Commercial Men's Ass'n v. Parks, 7 Cir., 179 F. 794.' See other authorities therein cited, and Jones v. Washington Nat. Ins. Co., La.App., 2 So.2d 696. [Emphasis supplied.]

"The insurance company further contended in the De Blieux case that the meaning of the clause in question as announced by the authorities in the Carnelious case had no application for the reason that the provision in the policy in the De Blieux case contained the further proviso (as does the policy in the instant case) that death shall not result directly or indirectly from disease in any form. In answering this contention the court said that this 'proviso is merely for the purpose of emphasizing the preceding language of the policy—that the death must result from "bodily injuries, effected directly and independently of all other causes through external, violent and accidental means." Proof to that extent nec-

essarily makes the disease proviso inapplicable.'

"In Ardoin v. Fireside Mut. Aid Ass'n, 180 La. 309, 156 So. 363, the plaintiff instituted suit under an accident insurance policy for the loss of an eye as a result of an alleged accident, contending that such injury was caused solely, directly, and independently of all other causes by external means of a violent or accidental nature within the terms of the policy. The defendant insurance company contended that the eye was not lost as the result of the accident but that its loss occurred prior thereto as the result of disease. The Court of Appeal, First Circuit, rendered judgment in favor of the defendant; see 151 So. 248, rehearing refused 153 So. 60. Plaintiff in that case made application to this court to review the judgment of the Court of Appeal on the ground that it erred in holding that the burden of proof rested on him. This court in its opinion found that the Court of Appeal correctly placed the burden of proof *in such a case* on the plaintiff, and affirmed its decision. In the course of that opinion we said:

"'It is a rule of law that one who sues upon a contract must allege and prove every fact necessary to bring him within the contract. Here it was necessary that plaintiff allege and prove facts showing that he held a policy from defendant; that this policy insured him against the loss of an eye; that his eye was lost while the policy was in force; the loss being caused solely, directly and independently of all other causes, by external means of a violent or accidental nature. * * *' (180 La. 309, 156 So. 364.)

"The court further held that the plaintiff must establish by a preponderance of the evidence that the loss was caused solely, directly, and independently of all other causes

by external means of a violent or accidental nature; that without such proof he could not recover because he had not brought himself within the terms of the policy.

"In the De Blieux case, supra, this court found that the plaintiffs established by a preponderance of the evidence that the deceased died from septicemia resulting from the accident and the infection caused by it, and not from the chronic blood disease with which the deceased was afflicted. In that case the plaintiffs correctly conceded, as pointed out by this court, that they had the burden of establishing that death resulted from external, violent, and accidental causes, independently of all other causes, including disease in any form.

"Furthermore, under the double indemnity provision of the policy in the instant case, the insurance company agrees to pay the amount thereof upon *receipt of proof* that the insured died as a direct result of bodily injuries effected solely through external violence and accidental means, independently and exclusively of all other causes. Thus the contract itself places the burden of proof on the plaintiffs.

"Under the well-established jurisprudence of this state, therefore, for the plaintiffs to recover in the instant case, they must prove by a preponderance of the evidence—the burden of proof being on them— that the injuries received in the conceded accident were the *predominant* cause of death." (Emphasis supplied.)

Defendant can find no comfort in Franklin, which held simply and only that a plaintiff, *in such a case*, bears the burden of proving that the *predominant* cause of death was an accidental injury, not disease. This decision does not conflict with Lafield, Beco, or Cutitto in any sense. If we apply the true rationale of Franklin here we find that,

not only did plaintiff prove the *predominant* cause of her husband's death to have been drowning—water in his lungs —it was the *only* cause.

■ Plaintiff clearly established her son's *prima facie* case by a preponderance of the evidence in showing without dispute that 1) he was the named beneficiary in the policy issued by defendant; 2) the policy contained a provision for double indemnity in the event of the insured's *death* " * * * as the result, directly and independently of all other causes, of bodily injuries sustained *through* external, violent and *accidental means*"; 3) the policy was in full force and effect on March 3, 1954; and 4) the insured died on that date, his *death* having resulted directly from accidental drowning, and only from that. This proof having been made, the burden then shifted to defendant, if it was to escape liability, to prove its *special defense* under the exclusionary ("provided") clause of its policy, namely, that the insured died from drowning resulting from epilepsy.

■ As indicated in Donnell, it is common knowledge that epilepsy itself is not a fatal malady. It does not kill, as does hypertension, advanced diabetes, and Bright's disease, the illnesses involved in Franklin. Drowning itself is fatal, and according to the undisputed proof, that was the sole cause of the insured's death.

■ Defendant has failed to prove, by a preponderance of the evidence, its special defense that the insured suffered an epileptic seizure before falling into the lake. In their brief, its counsel frankly state, "There is not one word of evidence as to how the deceased met his death. * * * There were no eyewitnesses, and we have no way of knowing except through conjecture or speculation." These statements are only half correct, because, as shown, we do know that death resulted directly from drowning. We do not know whether an epileptic seizure occurred beforehand. The only evidence which indicates that such

an attack may have occurred is the lay testimony of Giddens and Snead. Giddens said he had seen the insured fall into water or upon the ground on other occasions during seizures and that, upon removing the body from the lake on March 3, 1954, the position of the head and limbs " * * * looked just exactly like he had when he had one of those fits to me". In describing the appearance, he said that the head *and* limbs were drawn *"back"*. The Deputy Sheriff, R. E. Posey, partially contradicted this by stating, "The head was *down* and the back was up". With reference to the limbs, Snead testified, "They (his arms) were just down *by his side"*, but the head was "back". The Coroner was not questioned about the position of the head or limbs. While he stated in the death certificate that death was due to drowning, and that the insured "fell in lake while having epileptic seizure", he had no knowledge that such was a fact, this statement having been based entirely upon a history of epilepsy given by the family.

It would be just as reasonable to conclude that the insured stumbled or slipped from the lake bank or the boat, and fell into the water. There is no evidence as to whether he could swim. Likewise, no one knows what position the head or limbs of a drowning man will assume or retain, when drowning occurs either in a conscious or unconscious state. There is no proof to show that the muscular contractions of epilepsy will persist after death.

All of this demonstrates that defendant is asking us to conclude, on the basis of highly uncertain evidence, that the insured had an epileptic seizure causing him to fall into the lake and drown, when the only thing that is clear is that such a conclusion would have to be based, not on proven fact, but upon pure conjecture and speculation. The scant circumstantial evidence simply is not strong enough to sustain defendant's burden of proving its special defense.

In addition to claiming $3,000 for double indemnity liability, plaintiff sues for "damages" at the rate of 6% per annum on that sum, running from the date proof of death was submitted to defendant, March 17, 1954. LSA–R.S. 22:656. Under the circumstances here, defendant apparently having been in good faith, we do not feel that plaintiff is entitled to this penalty. Siracusa v. Prudential Life Insurance Co., 211 La. 1066, 31 So.2d 213.

For the reasons given, there will be judgment for plaintiff against defendant, in the sum of $3,000, plus interest from judicial demand, July 16, 1954, at the rate of 5% per annum.

Present judgment in accordance for signature.