**STANDARD LIFE INSURANCE COMPANY OF INDIANA, Appellant,**

v.

**Ada Bell Brown HUGHES, Appellee.**

**No. 16175.**

United States Court of Appeals
Fifth Circuit.

Feb. 5, 1957.

Sidney E. Cook, Charles D. Egan, Shreveport, La., for appellant.

Henry W. Bethard, III, Bethard & Bethard, Coushatta, La., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

BORAH, Circuit Judge.

This action, originally instituted in the state court from whence it was removed to the District Court for the Western District of Louisiana, was brought by Ada Bell Brown Hughes, as tutrix of the minor William Watson Hughes, Jr., to recover the sum of $3,000, plus penalty, interest and attorney fees[1] al-

---

1. As provided by LSA–Revised Statutes of 1950, 22:656 or 22:658.

legedly due the minor as beneficiary under the provisions of a life insurance policy issued by Standard Life Insurance Company of Indiana on the life of William Watson Hughes, the minor's father.

In this removed action, plaintiff alleged that on March 3, 1954 the insured, while fishing alone on Black Lake Bayou, Red River Parish, Louisiana, met his death by drowning and as a result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means, within the meaning of the double indemnity or accidental death benefit provision of the policy; and that despite amicable demand the insurance company has refused and failed to pay the claimed double indemnity or accidental death benefit. By way of responsive pleading the defendant denied that it was liable under the double indemnity provision of the policy and affirmatively alleged that the insured's death was caused or contributed to by disease or bodily infirmity, namely, epileptic seizures, during one of which he fell from the boat in which he was fishing into the water. The case was tried by the court without a jury, following which the court rendered its published opinion[2] and entered judgment for the plaintiff.

Appealing from this judgment the appellant urges that the trial court erred in holding: (1) that the burden of proof was upon the insurer to prove that the injury and death of the insured was brought about by his physical and mental infirmity, epilepsy; (2) that the presumption of death by accidental means, directly and independently of all other causes, continued after introduction of evidence of epilepsy; (3) that plaintiff had sustained the burden of proof under the double indemnity provision of the insurance contract; and (4) that the deceased did not expose himself to a known peril. Appellee on the other hand insists that under Louisiana law she should recover regardless of whether the insured

suffered an epileptic seizure, but that in any event, the trial court correctly held that defendant did not discharge its burden of proving that the insured's death was caused by his mental or physical infirmity, and that insured did not voluntarily expose himself to an unnecessary danger.

The policy in suit provides: "The Standard Life Insurance Company of Indiana * * * Hereby Agrees to pay to the Beneficiary of record under said policy, in addition to the amount payable according to the terms of said policy, the sum of Three Thousand Dollars upon receipt, at the home office of the company, Indianapolis, Indiana, of due proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means, provided * * * (5) that death shall not have been the result of self-destruction, whether sane or insane, or caused by or contributed to, directly or indirectly, or wholly, or partially, by disease, or by bodily or mental infirmity * * *." And the material facts which give rise to the controversy are these: On the morning of March 1, 1954, the insured in company with one Alvin Snead went fishing on Black Lake Bayou and he was last seen by Snead at about 10:00 a.m. on March 3rd, at which time he was standing by a tree and fishing from the bank with his boat anchored nearby. On that occasion Snead told the insured that he was going back to the camp, which was then one-quarter of a mile away, to prepare coffee. After making coffee Snead returned to the spot where he had last seen and conversed with the insured and upon finding that he was no longer there, assumed that he was fishing elsewhere. Whereupon Snead fished alone until about 4:00 p.m. at which time he became alarmed and summoned help. After a diligent search, the deceased's body was recovered from the bottom of the

---

2. Reported at D.C., 139 F.Supp. 490. Ruling on application for rehearing reported at D.C., 140 F.Supp. 577.

lake some twenty feet from his boat and near the spot where he had last been seen standing on the bank. The coroner who had been called to the scene did not perform an autopsy, but he examined the body and finding no outward signs of violence and observing that the deceased's lungs were filled with water, concluded and officially reported that death had resulted from "accidental drowning." While the coroner stated in the death certificate that the insured "fell in lake while having epileptic seizure", it is clear from the record that there were no eyewitnesses to the drowning and the coroner testified that he had no knowledge that such was a fact, the statement having been based entirely upon a surmise on his part from what the family had told him.

The deceased was a confirmed epileptic subject to frequent seizures which usually lasted from five to ten minutes and resulted in unconsciousness. In an effort to show that the death was caused or contributed to by epilepsy, the insurer introduced the testimony of only one witness, M. F. Giddens. This witness swore that on prior occasions he had seen the insured fall into shallow water while having a seizure and that he, Giddens, had pulled him out. He testified that when he removed the body from the water, it was completely stiff, the feet were crossed, the head was "drawn back" and that the position of the head and limbs looked to him "just exactly like he had when he had one of those fits." Emphasizing the body's stiffness, Giddens further testified that the clothes had to be cut off the body at the funeral home and that the head was never straightened up, but that the deceased was buried with his head still drawn back.

The lay testimony of this sole witness was at least partially contradicted by the appellee's witnesses: One of them testified that the arms were just hanging down by his sides when the body was removed from the water, and another swore that although the body was a little stiff, a support had to be placed under the deceased's midsection "to keep it from sagging", and that the arms were moved and placed on top of the body in order to get it out of the water and into the boat. The coroner who was the only witness competent to give expert medical testimony was not questioned about the position of the head or limbs, whether the body was stiff, and if so, whether the stiffness was the result of a seizure or of rigor mortis. Neither was evidence adduced which would tend to prove what position the head or limbs of a drowned person will assume or retain, or to show whether or not muscular contractions of epilepsy will persist after death. Indeed, it is impossible to tell from this record when the deceased fell into the water, at what hour his body was recovered, how long after death or removal from the water it was viewed by the coroner, or when the deceased was removed to the funeral parlor.

The record standing thus, the trial court held that the insurer had failed to sustain its burden of proving that insured's death was caused or contributed to by epilepsy. In reaching this conclusion, the trial court carefully reviewed the authorities and concluded that the rule enunciated by the Court of Appeal for the Second Circuit in Lafield v. New York Life Ins. Co., 9 So.2d 248, 249, was controlling. There the court said: " 'The correct rule, we think, is that the plaintiff must sustain the burden of proof in establishing that the death was the result of an accident or accidental means. When this fact is established under the first paragraph of the double indemnity provisions of the policy, then the burden shifts and it becomes necessary for the insurance company to show by a preponderance of the evidence that the loss arose from a cause for which it is not liable or from a cause which limits its liability.' " This rule is no doubt the correct rule and it is in keeping with the Louisiana decisions which hold that the provisions of insurance contracts are to be strongly construed against the insurer, that a liberal interpretation is not permitted of

clauses exempting or limiting the insurer's liability, and that the insurer has the burden of establishing the facts which relieve or limit its liability, *i.e.* of proving its special defenses. Massachusetts Protective Association v. Ferguson, 168 La. 721, 121 So. 863. Cf. Cutitto v. Metropolitan Life Ins. Co., 185 La. 161, 168 So. 761; Beco v. Peoples Industrial Life Ins. Co., 9 La.App. 371, 119 So. 281. The Lafield decision is likewise in accord with Carnelious v. La. Industrial Life Ins. Co., 133 So. 633,[3] wherein the Orleans Court of Appeal asserted that in suits under policies comparable to the one here at issue, the plaintiff had the burden of proving only that the "efficient" or "predominant" cause of death was accidental or by accidental means. However, and notwithstanding the fact that the Louisiana Supreme Court in Franklin v. Mutual Life Ins. Co. of New York, 216 La. 1062, 45 So.2d 624, 627, reaffirmed the rationale of the Carnelious case, in stating that "under the well-established jurisprudence of this state * * * for the plaintiffs to recover * * * they must prove by a preponderance of the evidence—the burden of proof being on them—that the injuries received in the conceded accident were the predominant cause of death," appellant, on the authority of the Franklin case is here claiming, as it did in the District Court, that the rule is otherwise. But we are no more impressed with this argument than was the court below and think that the Franklin case is inapposite here for there the court considered only whether the plaintiff had proved by a preponderance of the evidence that the injuries received in a fall were the *predominant* cause of the insured's death, and its holding was that plaintiff had not discharged that burden. Thus, it is plain that the court never reached the question of whether disease caused the fall, or upon whom lay the burden of proving that the disease either did or did not cause the fall.

██ In the instant case the appellee clearly established that the efficient or predominant cause of the insured's death was accidental drowning. Consequently, in order to relieve itself of liability, it was incumbent upon the insurer to prove by a preponderance of the evidence its special defense that the death was caused or contributed to by epilepsy. This it failed to do. There is nothing in this record, aside from conjecture based on insured's history of epilepsy and conflicting and inconclusive lay testimony, to show that insured suffered an attack of epilepsy at the time he was drowned.

We have carefully considered the other questions raised, but they were properly disposed of by the trial court, and do not merit further discussion.

Accordingly, the judgment must be and it is,

Affirmed.

3. Cited with approval by the Supreme Court of Louisiana in De Blieux v. Travelers Ins. Co., 185 La. 620, 170 So. 14, 15.