ELLIS, Judge.
This is a proceeding brought by Mary Griffin as the beneficiary of an accidental death insurance policy issued by the defendant insurance company on the life of one Harry Travis, deceased. The plaintiff alleges that on November 17, 1960 Harry Travis sustained an accidental injury which caused or developed into lockjaw causing his death at Charity Hospital in New Orleans on December 1, 1960.
The defendant denies liability on the ground that the death was not “accidental” within the terms of the policy, and has also relied on the specific exclusions contained in the policy that death or injury caused by the intentional act of the insured or any other person, or while fighting, resisting arrest or violating the law is not covered by the policy.
By supplemental petition the defendant denied liability under the policy on the *75 ground that the policy was void because, prior to its having been issued, the insured already carried the maximum allowed in this class of policy by this company. This defense was based on specific language in the policy which conforms to the language required by LSA-R.S. 22:213, subd. B(3).
The deposition of Luvina Mills, an elderly colored woman, was introduced by the plaintiff and adopted by the defendant. This testimony clearly established that the deceased went to the Mills home on Napoleon Avenue on the morning of November 17th, 1960 and was seated in thé room with Luvina, talking. One Selma Thomas, a roomer, was in the kitchen preparing breakfast for herself. Greetings were exchanged between Harry and Selma but Harry evidently took exception to the tone of Selma’s greeting, as a lively cursing match ensued.
Harry jumped out of the chair, ran over and grabbed Selma and began to beat her with his fist. He drug her into the bedroom as he tore her clothes from her and was on top of her on the bed choking and beating her. Selma was struggling and screaming. The noise was sufficient to bring a stranger in from the street but the stranger, upon seeing the cause of the disturbance, departed immediately.
Selma was able to grasp a broom handle used to prop the window open and with it she struck Harry on the back of the head. The force of the blow shattered the broom handle. Although Luvina did not actually see the fight after it moved into the bedroom, or the blow with the broom handle, we are convinced that she gave an accurate account of the battle from what she did see and hear. Luvina testified she did see the initial blows in the kitchen but that the bedroom was not visible to her from where she was sitting and that when she finally got to the bedroom assisted by the stranger the blow had already been delivered by Selma. Luvina described what she saw and heard well, though she had practically no conception of dates. She recounted the statements made by Harry that Selma had hit him; and those made by Selma that she “aimed” to kill Harry.
Luvina further testified that Harry walked around for a long time afterward dodging the law. Harry was taken to Charity Hospital on November 25, 1960 where he died. An autopsy disclosed the cause of death as a “compression fracture of 9th thoracic vertebrae, partial transection of spinal cord, hematoma of lumbosacral muscles, epidural hemorrage, vertebral column.” The cause of death prior to the autopsy was listed as “respiratory insufficiency” and pneumonia, with tetanus as a contributing factor.
There is no doubt but that the record is devoid of a scintilla of proof that decedent’s death resulted from anything other than the blows received in the fight. From the facts we can only conclude that if it did not ultimately cause decedent’s death, the plaintiff has completely failed to show any other possible set of circumstances which could have produced the injuries found during the autopsy or that could have caused tetanus. Therefore, plaintiff, who bears the burden of proof to bring the case within the terms of the policy, must rely on the fight of November 17th as having caused the death if she is to recover.
In so relying, plaintiff cannot recover for three very good reasons.
In the first place, the testimony of Luvina Mills clearly shows that Harry was the aggressor in a fight which resulted in his death. Campbell v. Metropolitan Casualty Insurance Company, 176 So. 233 (La. App.1937) and cases cited therein. The plaintiff has attempted to minimize the fight by describing it in terms of “horseplay” and “friendly tussling” and by saying that Selma’s clothes were accidentally torn off going through the doorway. We are impressed, however, with the consistent testimony of Luvina Mills that it was a real fight, as illustrated by the following excerpt from her deposition:
*76 “Q. Was it really a fight or was it more or less just tussling sort of?
“A. Oh, it was a fight, white folks, it was a fight. It was a fight.”
The second reason that plaintiff cannot recover is that the policy excludes cases where death is due to the intentional acts of third parties. There is no doubt that Selma intended to hit Harry with the broomstick, and Luvina testified that Selma stated she “aimed” to kill Harry. Clearly there was an intent to kill, or at least injure, the deceased, in defense of her life or person.
Assuming that this court could take judicial notice that no criminal proceedings were ever filed against Selma, this would not avail the plaintiff. It could be that Selma is a fugitive from justice; or that she acted in self defense; or that, as Luvina insisted five times in one short answer, Selma was insane. She does have a history of mental illness and was confined to the Hospital at Jackson, Louisiana at the time of the trial of this case.
The third reason plaintiff cannot recover if she relies on the fight of November 17th is that death resulted directly from a violation of the law, in that at the time decedent received the fatal injury, he was engaged in the commission of a battery, if not attempted aggravated rape. The law recognizes that those persons who engage in violations of the law place themselves in danger of injury and death and this additional risk is often and properly excluded from insurance coverage. Plaintiff sought here to show again that Selma and Harry were engaged in a friendly game and that consequently there was no intentional violent act. This court has already pointed out that there was a real fight in progress and that the participants were in earnest.
But even assuming that the plaintiff was able to show that death resulted from some cause not connected with the fight, she would still not be in a position to recover, because the policy sued upon was issued at a time when another policy of the same class issued by the same company and granting the same benefits on the life of the same person was 'in full force and effect. The previously issued policy was for $2,-000.00 which is the maximum amount written by this company on one individual.[1] We quote as follows from the pertinent part of the policy:
“EXCEPTIONS AND REDUCTIONS. The liability of this company shall be limited to the return of the premiums paid on this policy * * * if another Policy, or policies of the same class and granting the same benefits previously issued by the Company to the insured, be in force concurrently herewith, making the aggregate maximum indemnity in excess of $2,000.00, this policy becomes excess insurance and shall be void and all premiums paid hereunder shall, upon demand, be returned to the insured, or the person properly entitled thereto.”
Mr. Fulton Q. Gremillion, the manager of the Baton Rouge District for the defendant’s operations, testified that upon the death of Harry Travis,, four insurance policies, all issued by defendant, were brought in by the funeral directors.
The first policy was a cash life insurance policy with a value of $495.00 which has been paid to the beneficiary.
The second policy was a $2,000.00 accidental death policy of the same class as the policy sued on and allegedly covering the life of decedent. This policy was not paid to the beneficiary, one Ellen Hood, as the company was of the opinion that death was not accidental. We make no finding in this *77 opinion as to whether or not that position is well taken.
The third policy is the one sued upon and is a $1,000.00 accidental death policy covering the decedent’s life, naming plaintiff as beneficiary, and is of the same class as policy #2.
The fourth was a $300.00 burial policy. Payment on this policy was refused on the ground that policy ■# 1 was in existence and was in the maximum amount for this class of insurance written by this company on a single life. The refund of all premiums paid under this policy was tendered to and accepted by the beneficiary.
Unless the quoted clause of the policy is contrary to law or has been waived either expressly or impliedly, or unless the defendant cannot show that the policies were issued to the same person,, the plaintiff cannot recover.
The plaintiff relies on the cases of Cobbs v. Unity Industrial Life Insurance Company, 158 So. 263, (Orleans Appeal 1935) and Clay v. Liberty Industrial Life Insurance Company, 157 So. 838, 839 (Orleans Appeal 1934). These two cases are authority for plaintiff’s contention that continued acceptance of the premium for both policies operates as a waiver by estoppel of the provisions of the policy relating to the maximum coverage allowed. This is based on the theory that the insurance company is presumed to have knowledge of its own records. However, both of these cases were decided prior to the enactment of the insurance code of 1948 which contained the following new option for insurance companies, which option is now found in LSA-R.S. 22:213, subd. B(3), viz:
“B. Other provisions (optional) * * (3)Other insurance in this insurer: If a like policy or policies previously issued by this insurer to the insured be in force concurrently herewith, making the aggregate indemnity for (insert type of coverage) in excess of (insert maximum limit of indemnity) the excess insurance shall be void and all premiums paid for such excess shall be returned to the insured or his estate.”
Thus, the legislature has sanctioned this particular type of exclusion and we are bound to give it effect. The very thrust of the act anticipates that there will be premiums collected under the excess insurance coverage and for that reason requires that these premiums be returned.
Plaintiff has sought to show by reference to the two applications for accidental death insurance that the policies were not issued on the same life. It is true that the first application for $2,000.00, dated June 17, 1957 shows Harry Travis to be 33 years old and a resident of New Roads, Louisiana whereas, the second application for $1,-000.00 dated January 6, 1958 shows Harry Travis to be 30 years old and a resident of Baton Rouge. The dates of birth are given as August 9, 1923 and June 15, 1927 respectively. A signature purporting to be that of Harry Travis appears on the first application, whereas the second application is signed with a mark.
Both accident policies were submitted following the death of the one Harry Travis. Even more convincing is the fact that Ellen Hood, the beneficiary under the $2,000.00 policy, was a relative of decedent and Mary Griffin, plaintiff and beneficiary under the $1,000.00 policy had raised the decedent. Both women were at the funeral and while they did not know each other, they obviously knew the same, the one and only, Harry Travis. We believe that the defendant has successfully discharged his obligation to show that the two policies were in fact issued to the same Harry Travis.
Therefore, we find that the $2,000.00 and the $1,000.00 accidental death policies were issued on the same life and the latter is excess insurance under the terms of the policy as authorized by LSA-R.S. 22:213, subd. B(3).
*78 The plaintiff’s rights to recover all premiums paid under the policy sued upon are specifically reserved to her.
-For the reasons above set forth, the judgment of the trial court dismissing plaintiff’s suit at her costs is affirmed.
Affirmed.

. This Court does not consider in this opinion whether the policy sued upon would have been valid had the previously issued $2000.00 policy not been in force for any reason on the date of decedent’s death.