Le SUEUR, Judge.
Ann R. Witt appeals a judgment dismissing her action under an industrial life insurance policy for quadruple benefits for accidental death, the trial court having found that the policy exclusions applied and the insured had not died from accidental means.
Ann R. Witt is the beneficiary on an industrial life insurance policy issued on her brother, Fred E. Witt. On March 9, 1965, Fred E. Witt died as the result of stab wounds. Plaintiff submitted a claim for the proceeds of his insurance policy issued by defendant, claiming that the proceeds were $4,000.00. She asserted that the face value of the policy was $1,000.00, that under the double indemnity for accidental death provision she was entitled to another $1,000.00, and that the Additional Benefits Rider for accidental death guaranteed double the proceeds otherwise due, or $2,000.00 additional, for a total of $4,000.-00.
Defendant acknowledged its debt for the face value of the policy and promptly paid that amount. It denied any additional obligation for accidental death because of the exclusions contained in the policy for either provoking or being engaged in an assault or intentional homicide.
As stated before, the trial court ruled in favor of defendant and plaintiff has appealed contending that defendant failed to bear the burden of proof as required and that the testimony of the defendant’s witness was not credible.
The only account of the proceedings prior to and including the death of Fred E. Witt was provided by the person responsible for his death. He was not available at the time of trial as he was incarcerated at the State Penitentiary but his testimony was presented by defendant in the form of a deposition given in the presence of plaintiff’s and defendant’s attorneys. The testimony of the other persons present at the stabbing was not produced and no inference as to legal presumption from the failure to produce has been drawn by either party.
Carroll A. Lyons, the person responsible for Witt’s death, went to the apartment of a woman friend on March 9, 1965, between 4:00 and 5:00 o’clock p.m. At the time he arrived, Witt, another man and three women were already at the apartment. He claimed that when he arrived at the apartment Witt was high on “goof balls” or what he called “red birds”. Witt immediately began questioning Lyons about visiting “his (Witt’s) women”. A heated discussion began and continued for approximately one-half hour, during which time Witt and Lyons both had some drinks from a bottle of Scotch whiskey that Lyons had brought with him. Witt then left and returned in approximately one-half hour and reopened the argument with Lyons. Shortly thereafter, he drew a 13-14 inch butcher knife he had returned with and advanced upon Lyons, who drew his pocket knife. A struggle ensued, during which Witt was stabbed, the resulting wound being the cause of his death a short time later. Lyons dragged Witt outside the apartment and went home to change clothes and was eventually taken into custody there.
The defendant denies any liability over the face value of the policy because the *541 insured’s death was not the result of “accidental means” and was excluded from coverage by the policy. The provisions of the policy regarding double indemnity for accidental death and the exclusions therefrom are, in part, as follows:
“ * * * If the insured accidentally drowns or dies within 100 days from bodily injuries, resulting solely through external, violent, and accidental means, the Company will pay, instead of all other benefits provided under the policy, double the Amount of Insurance in 'force at the date of death. * * *
“The provisions for these benefits shall not apply
<< ‡ ‡ %
“(2) if the injury or death results (a) from the Insured’s engaging in a felony or the Insured’s committing or attempting to commit, while sane or insane, assault, self-mutilation or suicide, * * or (c) from intentional homicide, civil commotion, or insurrection or from engaging in underground mining or flight in any kind of air-craft except as a fare-paying passenger, as set out above, *
Plaintiff asserts that once she proves death by “external, violent and accidental means”, the burden of proof shifts to defendant to prove that the insured’s death was not accidental. The defendant has accepted that burden and claims that it has proven that the death was not accidental through the testimony of Lyons, to the effect that Witt assaulted him and he merely acted in self defense. Defendant alternatively asserts that it has borne the burden of proof by showing that Witt was the victim of an intentional homicide, perpetrated by Lyons. Either of defendant’s explanations of Witt’s death would satisfy exclusions from double indemnity benefits under the policy provisions.
Plaintiff denied that defendant could bear the burden of proof of exclusion by Lyons’ testimony and attacked the credibility of Lyons. She proved that Lyons had previously been arrested for armed, robbery, simple assault and possession of narcotics, to provide a background of his generally unsavory nature. She also attacked his credibility by disproving specific statements in his deposition. She introduced the report of the Forensic Laboratory of the Orleans Parish Coroner’s Office and the testimony of Dr. Monroe S. Samuels, the toxicologist, to refute Lyons’ statement that Witt was high on “red birds”. Dr. Samuels stated that “red birds” is the vernacular name for seconal capsules and that there was no trace of any barbiturate in Witt’s blood sample. Dr. Samuels also testified that certain amphetamine capsules are reddish or pinkish in color and that these would not have been detected in the laboratory tests since that is a stimulant rather than a barbiturate. Dr. Samuels had no personal knowledge that the term “red birds” always applied to seconal capsules, as he testified that it was his experience that when police officers “talk about ‘red birds’ they speak mainly of seconal”. Plaintiff also attacked Lyons’ statement that he went straight home after stabbing Witt and there changed clothes. She called Detective James Alphonse who testified that he was told by Lyons that he had gone to a friend’s house and changed before going home. Although this testimony was allowed, the legality of its admission and its weight as evidence is questionable.
This court, as did the trial court, takes note of Lyons’ background and its effect on his propensity to relate the facts surrounding the stabbing in a truthful manner. While aware that Lyons’ credibility leaves much to be desired, his testimony is un-contradicted and forms the only account of what transpired at the time Witt was stabbed. Short of simply allowing plaintiff to allege that her brother was stabbed and that this constituted an accidental death, per se, we have no choice other than to find that Lyons’ account of the stabbing is as close as we will come to an accurate account and accept it. Defendant’s attorney argued that the court could not ex *542 pect to find reliable witnesses of impeccable character in an environment as presented here. In his words, “The witness related the sordid circumstances of what happens when low-down men consuming too much whiskey and dope quarrel over loose women and resort to the use of knives as arbiter of their differences.” In these circumstances, witnesses are heard and their testimony evaluated against an otherwise complete lack of evidence.
Based on the available account of events, we must now apply the law and determine whether Witt’s death was an accident or whether it was excluded from double indemnity benefits.
In Barham v. State Life Ins. Co. of Indiana, 17 La.App. 253, 135 So. 730 (1st Cir. 1931), the court was presented with a case that began as a fight for possession of a gun and the ensuing beating resulted in the insured’s death. The only account of the fight was that of the survivor. The court, quoting from Franchebois v. New York Life Ins. Co., 171 La. 358, 131 So. 46 (1930), stated:
“Our conclusion is that the insured was the aggressor and by his own act precipitated the difficulty which resulted in his death. Therefore, his beneficiaries cannot successfully urge that, within the meaning of the policies, the insured’s death was brought about by accidental cause.” Also see Meister v. General Accident Corporation, 92 Or. 96, 179 P. 913, 4 A.L.R. page 718.
The policy in the Barham case also contained the double indemnity provisions for death resulting from “external, violent and accidental means” and the plaintiff’s demands were rejected.
In Lloyd v. Unity Life Ins. Co., 225 La. 585, 73 So.2d 470 (1954), the insured died as the result of stab wounds received in a fight. The stabber pleaded guilty to manslaughter, as did Lyons. The policy, although granting double indemnity coverage for death resulting from “external, violent and accidental means”, excluded “death resulting directly or indirectly from homicide”. The court held that “the word ‘homicide’ includes the intentional felonious killing of one person by another, and under this definition the appellant here cannot recover”. (Citations omitted.)
In Griffin v. First National Life Insurance Company, 155 So.2d 74 (La.App. 1st Cir. 1963), the court rejected plaintiff’s contention that the insured’s death was accidental. The only witness to the beating that resulted in death only saw the beginning of the fight and did not see, although she heard, the subsequent altercation including the blow that resulted in death. The insured attacked another person with his hands and began beating her until she grasped a broom handle and struck her assailant on the back of the head. As a result of that blow he later died. The policy in question excluded death caused by the intentional act of the insured or any other person, or while fighting. The court held that the beneficiary could not recover because the insured was the aggressor in the fight resulting in his death and because he died as the result of an intentional blow, although the intentional blow in defense of life or person may not have been intended to kill.
Based on the foregoing cases and the application of their principles to the present factual situation, we find that the deceased insured was committing or had committed an assault that resulted in a homicide that was intentional in that the person stabbing Witt intended to stab him, although he may not have intended that the stabbing cause death. The death of Fred E. Witt would, therefore, be excluded from the policy provisions for double indemnity for accidental death.
The judgment of the trial court dismissing the plaintiff’s action at her costs is affirmed, plaintiff to pay all costs of this appeal.
Affirmed.