HOOD, Judge.
Mrs. Yolande Bernard instituted this suit to recover benefits alleged to be due on three insurance policies issued by defendant, First National Life Insurance Company, insuring the life of Doris B. Bernard, who died as a result of a gunshot wound. The trial court rendered judgment in favor of plaintiff, and defendant has appealed.
The sole issue presented is whether coverage for the death of Bernard was specifically excluded by provisions contained in each of the above mentioned policies, and thus whether the defendant insurer is liable for any of the benefits claimed by the beneficiary named in each such policy.
Plaintiff was the mother of the deceased insured, and she is the sole beneficiary named in the three policies which are at issue here. Bernard received a gunshot wound in the chest, from a pistol fired by his wife, Mrs. Verna Mae Bernard, on October 27, 1969, and he died a few minutes after the wound was inflicted. At the time of his death there were in effect three insurance policies insuring the life of Doris B. Bernard, all of which had been issued by defendant.
One of these policies, bearing No. 1681147, is a life insurance policy, having a face value of $500.00 and providing for double indemnity in case of accidental death. The double indemnity clause provides that the extra benefits will become due and payable “in the event of accidental death,” and it stipulates that in order for the double indemnity feature to apply the death must result from bodily injuries “effected solely through external, violent and accidental means.” With reference to this coverage the policy also provides that:
“This accidental death benefit does not cover * * * death during the period of time the Insured is committing a felonious act or misdemeanor in violation of criminal law * * *.”
The second policy involved here, bearing No. 1981914, is an accidental death policy, with a face value of $1250.00. The policy provides that the benefits therein set out become due if death results from injury “effected solely through violent, external and accidental means,” and that:
“THIS POLICY does not cover death caused * * * (2) from participation in an assault or felony.”
The third contract on which plaintiff bases her claim, Policy No. 2692320, is an accidental death policy, with a face value of $1160.00. It stipulates that the benefits therein provided become due only if death results from “accidental means,” and it contains the following exclusionary provision :
“THIS POLICY does not cover death or injury to the insured (1) caused by the intentional act of the insured, or any other person, while sane or insane; (2) while fighting, resisting arrest or violating the law; * *
The decedent insurer has paid $500.00 to plaintiff, representing the face amount of the life insurance policy hereinabove first described (Policy No. 1681147), but it has refused to pay the additional sum of $500.-00 under the double indemnity provision of that policy. It bases its refusal to make that payment on the ground that the death was not accidental and that the insured was “committing a felonious act or misdemeanor in violation of criminal law” when his death occurred. It contends that under those circumstances the insurer is not liable for double indemnity. Defendant also denies liability under the second and third policies, above described, contending that *915 the death was not accidental and that coverage is excluded because the insured, at the time of his death, was participating in an “assault or felony,” that he was “violating the law,” and that his death was caused by the “intentional act” of another person.
Bernard was fatally wounded at about 2:35 A.M. on October 27, 1969, behind the Sunbeam Bakery building, in Lafayette, Louisiana. Shortly before that time, his wife, Mrs. Verna Mae Bernard, arrived at the bakery alone in an automobile owned by William H. Fant, an employee of the bakery. She parked the car in the rear of the building and remained seated in it for at least two hours waiting for Fant to complete his work shift and join her. At 1:10 A.M. Fant emerged from the rear of the building and talked to Mrs. Bernard. They were aware of the fact that the latter’s husband was parked in an automobile near the side of the bakery and that he was looking for Mrs. Bernard, and under those circumstances they concluded that it was unsafe for them to leave together. Bernard apparently did not know that his wife was in the parked car, although he did know that she and Fant had been seeing each other.
In order to draw Bernard away from the bakery, Fant walked toward a restaurant, and in doing so he passed by Bernard’s car. He rejected the latter’s offer to give him a ride, and Fant then caught a cab which took him to his home. Bernard followed the cab, apparently to determine whether Fant intended to pick up Mrs. Bernard. Fant remained at his home for over an hour, and then he had another cab take him back to the rear of the bakery where Mrs. Bernard was still waiting in the parked automobile. Very shortly after the cab parked by Mrs. Bernard’s car, and while Fant was paying the taxi driver, Mr. Bernard drove up suddenly and brought his car to a stop behind both vehicles, with his headlights shining on them. Bernard then opened the door of his car and called out, “Verna, get out of that car.” He then got out of his car with a pistol in his hand, and approached Fant and Mrs. Bernard, who were near each other, although Mrs. Bernard was still seated in the parked automobile. Fant asked Bernard to “Wait, let me talk to you,” but the decedent replied, “I don’t want to talk to you. You lied to me, you m. f.” As Bernard continued to approach, waiving his pistol and pointing it generally in the direction of his wife and Fant, Mrs. Bernard stepped out of the car in which she had been sitting with a pistol in her hand. When the decedent reached a point from 10 to 20 feet from her, she fired one shot with her pistol. The bullet struck Bernard in the chest, knocking him down and causing his death about five minutes later.
Immediately after Bernard fell to the ground, Fant went to assist him, but the decedent then fired his pistol several times compelling Fant to retreat behind the parked cars. Bernard died a few minutes thereafter. His hand was still clutching his pistol when the coroner arrived several minutes later.
Mrs. Bernard testified that she and her husband had separated a number of times prior to his death, that they were not living together when this incident occurred, that she had been going out with Fant, and that her husband was aware of that fact. She stated that on prior occasions the decedent had threatened to kill her, and that she knew he carried a gun and that he was looking for her the night this shooting took place. She said she feared for her life as Bernard approached with a gun, that she cocked the pistol in her possession before she got out of the car, and that she “intended to shoot him, but not kill him.” Her testimony, in part, was:
“I didn’t intend to kill him. I was going to shoot him, but I hadn’t planned on killing him. I had — I meant to hit him, to get him away from me so — because he knew I was scared of him and I just wanted to do this so that — I *916 couldn’t say other than I was scared of him and I knew he had a gun, but to say that to kill him, no.”
The testimony of another witness, Louis A. Mitchell, Jr., supports Mrs. Bernard’s statement that the decedent had threatened to kill her on at least one other occasion. No charges of any kind were preferred against Mrs. Bernard arising out of the death of her husband.
The trial judge concluded that Bernard’s death was unintentional and accidental, and that plaintiff is entitled to recover the death benefits stipulated in all three of the above described policies. We think the trial court erred in arriving at that conclusion.
In our opinion, Bernard’s death was caused by the intentional act of his wife. Although Mrs. Bernard did not intend to kill him when she fired the pistol, she testified that she did intend to shoot him and to hit him. Even though the shot may have been fired in self-defense, it nevertheless was fired deliberately and intentionally with the intent to inflict bodily harm on the decedent.
We also conclude that Bernard was the aggressor. The evidence shows that he armed himself and spent the greater part of the evening immediately before his death searching for his wife. He had warned Fant a few days earlier that “he had better not ever catch (him) and Verna together,” and he had telephoned Fant again just a few hours before the shooting occurred to inquire as to where he could find Mrs. Bernard. Following that telephone inquiry, Bernard tracked Fant for several hours, until about 2:35 A.M., apparently feeling that the latter would meet Mrs. Bernard that night and intending to confront Fant and Mrs. Bernard when they met. And then, when Fant did eventually join Mrs. Bernard, the decedent assaulted them by pointing a loaded gun at them. We are convinced that Mrs. Bernard was genuinely afraid of her husband, and that because of his prior threats she had reason to fear that Bernard intended to take her life or to inflict great bodily harm on her at the time the shooting occurred. We find that Bernard not only was the aggressor, but that he was committing the offense of aggravated assault, a misdemeanor, at the time he received his fatal injury. See LSA-R.S. 14.37.
The law is settled that if the insured was the aggressor, and by his own act precipitated the difficulty which resulted in his death, then it cannot be said that his death was an accident or that it was effected through accidental means. Witt v. American National Insurance Company, 226 So.2d 539 (La.App. 4 Cir. 1969); Franchebois v. New York Life Insurance Company, 171 La. 358, 131 So. 46 (1930); Barham v. State Life Insurance Company of Indiana, 17 La.App. 253, 135 So. 730 (1 Cir. 1931); and Bowman v. Inter-Ocean Insurance Company, 241 So.2d 579 (La.App. 2 Cir. 1970).
Our .conclusion is that plaintiff is not entitled to recover under any of the three policies involved here for two reasons: First, since the insured was the aggressor and his act precipitated the difficulty which resulted in his demise, his death was not “accidental” within the meaning of any of the three policies; and, second, coverage was specifically excluded in each of those policies because at the time of the insured’s death he was “committing a misdemeanor,” or he was participating in an “assault” or was “violating the law.”
For these reasons, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, and against plaintiff, rejecting plaintiff’s demands and dismissing this suit at her costs. The costs of this appeal are assessed to plainti f f-appellee.
Reversed.