287 So.2d 642 (1973)
Norma Jean WILLIS, Plaintiff and Appellee,
v.
Billy Jean WILLIS et al., Defendants and Appellants.
No. 4386.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1973.
Rehearing Denied January 21, 1974.
*643 Gist, Methvin & Trimble by DeWitt T. Methvin, Jr., Alexandria, for defendantsappellants.
Gravel, Roy & Burnes by Dan E. Melichar, Alexandria, W. D. Atkins, Jr., Lafayette, for plaintiff-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
The plaintiff, Norma Jean Willis, instituted this suit against Billy Wayne Willis and the Union Labor Life Insurance Company for a declaratory judgment alleging herself to be the proper beneficiary under two policies of insurance taken out by her deceased husband, Delbert Ray Willis, a member of the Louisiana Laborers Health and Welfare Plan of pipeline workers, under group policies written by the defendant insurer. She further claimed that an alleged form, changing beneficiaries of the policy from herself to the defendant, Billy Willis, was a forgery.
Billy Willis answered, denying that the change of beneficiary form was a forgery, alleging himself to be the proper beneficiary under the policies, and instituting a third party demand against Union Labor Life Insurance Company for the total face value of the two policies in the sum of $8,000.00.
Union Labor Life Insurance Company answered plaintiff's petition admitting that it issued the aforesaid policies to the decedent and admitting liability unto a proper beneficiary in the amount of $4,000.00 under the group life policy, but denying any *644 liability under the accidental death and dismemberment policy. This denial was primarily for the reason that allegedly the decedent, Delbert Willis, died while the aggressor in an altercation resulting in his death and as a result, under the provisions of both the insuring and limitation clauses of the policy, as well as under the jurisprudence of this state, no benefits were payable.
Defendant insurance company simultaneously instituted a concursus proceeding, depositing the proceeds under the group life policy in the amount of $4,000.00 in the registry of the district ocurt and called upon the parties claiming to be beneficiaries to litigate that issue. During the course of hearings on this concursus proceeding both Billy Willis and Norma Willis reached an agreement, which was made the judgment of the court, whereby the children of Norma Willis would receive the amount deposited in the registry of the court.
Thereafter the depositions of Norma Jean Willis and Larry Wayne Coker were taken and this suit was submitted to the court on stipulations. One such stipulation was that the only question remaining was whether the defendant, Union Labor Life Insurance Company, was liable under the accidental death and dismemberment policy for the amount of $4,000.00 or whether the death of Delbert Willis occurred under such circumstances that no benefits became payable under the policy.
The district court rendered judgment in favor of Norma Willis and Billy Willis and against the Union Labor Life Insurance Company for the contested $4,000.00. It is from this judgment that Union Labor Life Insurance Company has appealed. Plaintiff, Norma Willis, answered the appeal and pursuant to R.S. 22:656 seeks penalties and attorney fees allegedly due by virtue of defendant's failure to timely pay the benefits sought without just cause.
The facts were elicited by depositions of the only two witnesses to the altercation, the man responsible for Delbert Willis' death and the decedent's estranged wife, and are as follows:
Norma Jean Willis and Delbert Ray Willis were judicially separated on December 10, 1970. On the night of January 2, 1971, Norma Jean had a date with Larry Wayne Coker. As they were driving around the town of Oakdale, Delbert Willis started following them in his truck, and forced the Coker vehicle off the road by pulling in front of the latter. Thereafter Willis emerged from his truck and walked back to the Coker vehicle where he remarked something to the effect of "Do you remember what I told you?" or "What did I tell you last night?" Immediately thereafter Delbert Willis struck Larry Coker through his window and attempted to pull the latter out of his vehicle. In the ensuing moments, as Coker was being pulled from his truck, he grabbed a pistol lying on the seat of his vehicle and shot Delbert Willis three times, causing his death.
The record reflects that the decedent knew that Coker was going out with Norma Willis. Norma testified that only the night before the incident involved herein, her husband had threatened to kill both her and Coker if they were caught together again. Although Coker testified that about a week before the incident the decedent had told him and several other men that he would kill or hurt the man that went out with his wife, he also said that on the night before his death Willis told Coker that he did not mind him going out with Norma so long as they did not take the children with them. The record indicates that Coker and Willis had been friends for some fifteen years, worked together, and had not had any trouble before. A perusal of Coker's testimony indicates that the decedent's reputation was such that he was not really bad, and that his bark was greater than his bite. Coker further stated that on the night of the altercation it was his thought that the decedent had come to "whip up" on him and he knew that Willis had a bad temper.
*645 The defendant denies liability on grounds that:
(a) the death of Delbert Willis was not "accidental" within the terms of the policy, and
(b) that specific exclusions are contained in the policy prohibiting coverage.
The questions which the above defenses give rise to are the prominent issues before this court on appeal.
The policy provisions in question provide that the benefits therein set out become due if death or bodily injuries are "caused directly and exclusively by external, violent and purely accidental means", and that:
"No payment shall be made under this Accidental Death and Dismemberment provision for any loss resulting from or caused directly or indirectly, wholly or partly, by: * * * (c) participation in the committing of a felony."
The rule is well established that it is incumbent upon the plaintiff herein to sustain the burden of proof in establishing that the death was the result of an accident caused "directly and exclusively by external, violent and purely accidental means", as required by the above referred to policy provisions. Haynes v. Modern Woodmen of America, 135 So.2d 548 (La. App.3rd Cir. 1962); Lafield v. New York Life Insurance Co., 9 So.2d 248 (La.App. 2nd Cir. 1942).
The plaintiff has clearly established the fact that the death of the insured resulted directly and exclusively of all other bodily injuries effected solely through external and violent causes. The evidence shows that decedent insured was shot three times by Larry Coker, as a result of which his death followed. The death was therefore not natural or self inflicted. We now ask: Did he come to his death by accidental means?
On the question of what is "accidental" our courts often quote from Konrad v. Union Casualty and Surety Co., 49 La.Ann. 636, 21 So. 721 (1897), wherein was stated:
". . . If it be manifest that death was neither occasioned by natural causes nor by the deceased himself, it at once becomes evident that the `violent and accidental' must be considered as cause.
. . . It may be logically inferred indeed, it must be inferred, as it was not a natural death or a suicidethat the death was caused by external violence and accidental means."
See also Cutitto v. Metropolitan Life Insurance Co., 185 La. 161, 168 So. 761 (1936); Haynes v. Modern Woodmen of America, supra; Lafield v. New York Life Insurance Co., supra.
Accordingly, the evidence clearly shows that the decedent met an "accidental" death by violent means within the meaning of the policy.
However, once the presumption of accidental death is thus established the burden then shifts to the defendant insurer to show by a preponderance of the evidence that such insurer is nevertheless not liable by reason of a special defense or an exclusion clause of the policy in question. Cutitto v. Metropolitan Life Insurance Co., supra; Haynes v. Modern Woodmen of America, supra; Lafield v. New York Life Insurance Co., supra; Thorn v. Metropolitan Life Insurance Co., 2 So.2d 269 (La. App.Orl.Cir.1941).
Initially defendant alleges that this was not an "accidental" death by "accidental" means by reason of the fact that the decedent, Delbert Willis, was the aggressor in the altercation and that Larry Coker was acting in self defense.
It is well established in the jurisprudence that if an insured is the aggressor and his actions precipitate his death there can be no recovery under an accidental death policy. Franchebois v. New York Life Insurance Co., 171 La. 358, 131 *646 So. 46 (1930); Bernard v. First National Life Insurance Co., 248 So.2d 913 (La.App. 3rd Cir. 1971); Bowman v. Inter-Ocean Insurance Co., 241 So.2d 579 (La.App. 2nd Cir. 1970); Witt v. American National Insurance Co., 226 So.2d 539 (La.App. 4th Cir. 1969); Griffin v. First National Life Insurance Co., 155 So.2d 74 (La.App. 1st Cir. 1963).
After considering the testimony of the two witnesses it is obvious that at the outset Delbert Willis was in fact the aggressor in the altercation which led to his death. But it is equally obvious to this court that under certain circumstances an aggressor can lose that designation and become the victim, just as the initial victim can become the aggressor. This results whenever the original victim resorts to excessive violence and unnecessary force in repelling the assault of the original aggressor. Tripoli v. Gurry, 253 La. 473, 218 So.2d 563 (1969); see also Haynes v. Modern Woodmen of America, supra. This is also the case when the original aggressor withdraws from the altercation and is thereafter killed by his adversary. Lafield v. New York Life Insurance Co., supra; Grose v. Liberty Industrial Life Insurance Co., 6 La.App. 390 (La.App.1st Cir. 1927).
We conclude, under the facts and circumstances of this case, that the actions of the decedent, Delbert Willis, and Larry Coker fall within the first mentioned category. We feel that the decedent's actions did not justify or warrant the extent of retaliation resorted to by Coker. Coker's acts were unnecessary and out of proportion to the wrong committed by decedent.
To reiterate, the burden is on the defendant insurer to prove his special defenses. According to the evidence presented, defendant has not shown to this court sufficient justification for Coker's use of deadly force to counter the decedent's actions.
It is generally held that a person is not justified in using a dangerous weapon in self-defense where the attacking party is not armed but commits the battery by means of his fists or in some manner not essentially dangerous to life or limb. Brasseaux v. Girouard, 269 So.2d 590 (La. App.3rd Cir. 1972); Bethley v. Cochrane, 77 So.2d 228 (La.App.Orl.Cir.1955).
According to the elicited testimony Coker didn't see a gun or a knife on the decedent before or during the altercation. Nor does the record indicate that the decedent in fact was carrying a gun as alleged. It was also Coker's testimony that the felt the decedent had come to "whip up on him". This and other testimony fails to show to this court that Coker had reasonable grounds to believe that he was in danger of losing his life or receiving great bodily harm. In effect, we think that the defendant has not sustained its burden of proof as to this defense.
In addition defendant contends that at the time the insured met his death he was committing the felony of attempted murder. As aforementioned, the burden of proof is on the defendant pleading his special defenses. The defendant has however in our opinion failed to produce evidence sufficient to convince this court that such a felony was in progress. Defendant has not shown the statutorily required specific intent of the decedent to kill Coker or inflict great bodily harm on him by a preponderance of the evidence. Undoubtedly the decedent was intent on "whipping" Coker. We can't presume he was attempting to kill him. Additionally neither can we presume that the victim under all aspects of this case, expected that he himself would be shot and killed. Thus defendant insurer has also failed to prove its final special defense.
On the question of penalties and attorney fees under LSA-R.S. 22: 656, it has generally been held that where the insurer refuses in good faith or with just cause to pay accidental death benefits under a life policy because of certain defenses, the beneficiary is not entitled to the 6% *647 penalty. Siracusa v. Prudential Insurance Company of America, 211 La. 1066, 31 So. 2d 213 (1947); Hammond v. National Life and Accident Insurance Co., 243 So.2d 902 (La.App.3rd Cir. 1971). In this case we think, in view of the facts and circumstances, that it cannot be said the insurer was without good faith or just cause in contesting the claim.
Plaintiff also is not entitled to recover the fees paid his attorneys as there is no law allowing such recovery. Brown v. Continental Casualty Co., 161 La. 229, 108 So. 464 (1926); Mataya v. Delta Life Insurance Co., 71 So.2d 139 (La.App.Orl. Cir.1954); Grigsby v. First National Life Insurance Co., 7 So.2d 742 (La.App.2nd Cir. 1947).
For the above and foregoing reasons we find no manifest error in the conclusions of the trial court. The judgment is therefore affirmed at appellant's costs.
Affirmed.

ON APPLICATION FOR REHEARING
PER CURIAM.
Plaintiff originally on appeal to this court alleged that she was entitled to penalties and attorney fees under LSA R.S. 22:656. Under such allegations we held in our original opinion that attorney fees were not provided for under that statute and that penalties would not be assessed as just cause or reasonable grounds existed for defendant insurer's refusal to pay the benefits. Now, in her application for rehearing, the plaintiff alleges she is entitled to penalties and attorney fees under LSA R.S. 22:657.
Although the end result is the same, in order to clarify our original opinion we now conclude that the policy in question was a health and accident policy containing an accidental death provision and therefore to be interpreted under LSA R.S. 22:657 (B), rather than as a life policy under LSA R.S. 22:656. However, the jurisprudence interpreting LSA-R.S. 22:657(B), as well as the language of the statute itself, is to the same effect as LSA R.S. 22:656. Both deal with death claims and provide that penalties are to be assessed only if the insurer fails to pay without just cause. See Boudreaux v. First National Life Insurance Co., 225 So.2d 687 (La.App.3rd Cir. 1969); Lafield v. New York Life Insurance Co., 9 So.2d 248 (La.App.2nd Cir. 1942). In addition neither provide for attorney fees. We therefore come to the same conclusions as found in our original opinion.
With this clarification of the record, and for the reasons herein shown, plaintiff's application for rehearing is denied.