United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 7, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 03-30257
_____

DAWNE S. FIFFICK,

Plaintiff-Appellant

v.

ECON-O-CHECK CORP., ET AL,

Defendants

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,

Defendant-Appellee

--------------------
Appeal from the United States District Court
for the Western District of Louisiana
02-CV-395
--------------------

Before DeMOSS, DENNIS and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge.[*]

Appellant Dawne Fiffick appeals from summary judgment entered in favor of Appellee American Bankers Insurance Company of Florida, the company that provided accidental death insurance for her father, Douglas Hardesty. We affirm in part and reverse and remand in part.

Douglas Hardesty purchased the policy, labeled "Group

---

[*]Pursuant to 5th Cir. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

Accident Insurance," after it was offered to him as a customer of Hibernia Bank.  By its terms, the policy provided benefits in the event of bodily injury (including death) caused by an accident. Additionally, the declaration section of the policy stated, "THIS IS ACCIDENT ONLY COVERAGE – IT DOES NOT PROVIDE COVERAGE FOR LOSS FROM SICKNESS."  Nowhere did the policy define "accident."

The policy also contained two relevant exclusions.  The first excluded coverage for a loss caused by a sickness or a disease.  The second exclusion provided that  the policy did not cover a loss resulting from "the influence of any drug or narcotic or any other chemical substance other than as prescribed by a licensed physician."

Hardesty died in a motel room in Shreveport, Louisiana, on February 19, 2001.  The coroner determined that Hardesty died from taking a mixture of drugs, or "polypharmacy."  The coroner found three drugs in Hardesty's system – Xanax, methadone,[1] and hydrocodone (a prescription narcotic for which Hardesty did not have a prescription).  The Xanax levels in Hardesty's blood were particularly elevated, measuring almost two times the therapeutic dose for the drug.[2]  This level was significantly higher than the amount that would have been in a healthy person's blood if only

---

[1]Hardesty had prescriptions for both Xanax and methadone.

[2]The coroner testified that this level was high enough to have caused Hardesty's death by itself but that he could not rule out the other drugs having played a role.

the prescribed dose had been taken.  But Hardesty was not a healthy person; as a result of years of alcohol abuse, he suffered from liver disease.  Because of Hardesty's liver problems, the coroner could not eliminate either one of the two possible causes of the elevated Xanax levels: either Hardesty took an overdose, or his diseased liver was unable to process the prescribed dose. In either event, the coroner classified Hardesty's death as an accident, as opposed to intentional death or suicide.

American Bankers eventually denied coverage under the policy.  In its denial letter, the company indicated that Hardesty's policy had lapsed because he had only paid premiums through January, 2001.

Fiffick originally sued American Bankers and another defendant, Econ-o-Check Corporation,  in state court. After removal and discovery, Fiffick dismissed the other defendant from the suit.  Both Fiffick and American Bankers moved for summary judgment.  The district court granted American Bankers' motion, determining that the policy was health and accident insurance and that it did not cover Hardesty's death.  Specifically, the court concluded that Hardesty's death was either caused by sickness (the liver disease) or by taking more Xanax than his doctor had prescribed.  The court ruled that the policy specifically excluded coverage for both of these possibilities.  Fiffick appeals from this ruling, which we review de novo.  Hanks v.

3

Transcon. Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992).

Did the district court properly classify the policy?

Much of the parties' dispute centers on whether the insurance policy is considered health and accident insurance or life insurance under Louisiana law.  Fiffick argues that the policy is individual life insurance.  As individual life insurance, according to Fiffick, the policy cannot condition benefits on either the insured's cause of death or his status at the time of his death.

Louisiana law classifies different kinds of insurance. Under the current statute, life insurance is defined as:

> Insurance on human lives and insurances appertaining thereto or connected therewith. For the purposes of this Code, the transacting of life insurance includes the granting of annuities or survivorship benefits; additional benefits, including the acceleration of life or endowment or annuity benefits in advance of the time they would otherwise be payable, in the event of death by accident; additional benefits in event of the total and permanent disability of the insured; and optional modes of settlement of proceeds.

LA. REV. STAT. ANN. §22:6(1).


In contrast, health and accident insurance is currently defined as:

> Insurance of human beings against bodily injury, disablement, or death by accident or accidental means, or the expense thereof, or against disablement, or expense resulting from sickness or old age, or against major expenses incurred by an employee benefit plan due to the illness or injury of a covered employee, or against major expenses incurred by a health care provider at financial risk for provision of health care to persons under an agreement, and every insurance

4

appertaining thereto...

La. Rev. Stat. Ann. §22:6(2)(a).

The statute in effect when Hardesty died contained one difference that Fiffick considers critical. Instead of defining health and accident insurance with an "or" between the accident and sickness provisions, the earlier statute used the conjunction "and." Thus, the relevant definition of health and accident insurance read: "Insurance against bodily injury, disablement or death by accident <u>and</u> against disablement resulting from sickness and every insurance appertaining thereto." (emphasis added).

In its summary judgment order, the district court quoted the revised statute's language. Both parties agree that this was error. They disagree, however, about the significance of this error. According to Fiffick, the legislative change from "and" to "or" altered the meaning of the statute and the classification of the policy, but American Bankers argues that the change did not affect the policy's classification.

Fiffick's interpretation of the statute is similar to the interpretation in a now-overruled Louisiana Supreme Court case, <u>Tabb v. Louisiana Health Services & Indemnity Company</u>, 361 So.2d 862 (La. 1978). In <u>Tabb</u> the court concluded, like Fiffick argues now, that a hospital and medical care policy was not health and accident insurance because "[i]t did not insure against injury, disablement or death." <u>Id</u>. at 863. The court determined,

5

therefore, that the policy that only covered hospitalization was a "miscellaneous" one.[3]  Id.

The Louisiana Supreme Court overruled Tabb in Rudloff v. Louisiana Health Services & Indemnity Co., 385 So.2d 767, 770 (La. 1980) (on rehearing).  In Rudloff, the court concluded that a hospitalization and medical care policy should, in fact, be classified as health and accident policy.  Id.  Although the court did not expressly address this point, the hospitalization policy still did not  insure against injury, disablement or death.  Rudloff, while not about accidental death and dismemberment policies, strongly indicates that a policy does not need to provide all the coverage listed in the older "health and accident" definition to be classified as health and accident insurance.

As the district court noted, other cases also support American Bankers' position.  For example, in Daigle v. Travelers Insurance Co., 421 So.2d 302 (La. App. 1st Cir. 1982), an accidental death and dismemberment policy was viewed as a health and accident policy.  Also in Willis v. Willis, 287 So.2d 642, 647 (La. App. 3d Cir. 1974) (per curiam) (on rehearing), the

_____

[3]Like health and accident insurance and life insurance, miscellaneous insurance is another category of insurance under Louisiana law.  It covers insurance for "[a]ny other kind of loss, damage, or liability properly the subject of insurance and not within any other kind or kinds of insurance as defined in this Section, if such insurance is not contrary to law or public policy." LA. REV. STAT. ANN. §22:6(14).

appeals court concluded that a policy that paid benefits for accidental death or bodily injury was a health and accident policy, not a life insurance policy.[4]

Nevertheless, Fiffick can point to one intermediate appellate case to assist her. In <u>American Health & Life Ins. Co. v. Binford</u>, 511 So.2d 1250, 1253 (La. App. 2d Cir. 1987), the court determined that an accidental death policy that also provided for lump-sum payments for various accident-related injuries was properly classified as life insurance. The court referred to the requirement that the death be accidental as "a limiting factor," but then indicated that this limiting factor did not prevent the policy from being life insurance.[5] <u>Id</u>.

Finally, the statutory language supports American Bankers' interpretation. The life insurance statute refers to "additional" benefits for accidental death. LA. REV. STAT. ANN. §22:6(1) Accidental death and dismemberment benefits, however, were not additional to other benefits in Hardesty's policy. Rather, these benefits were the ones contracted for: the policy

---

[4]Incidentally, one of the cases that Fiffick cites for another point, distinguishes a policy for "Indemnity for Loss of Life, Limb, Sight or Time Caused by Bodily Injuries Effected through Accidental Means" from a life insurance policy. <u>Duhon v. Colonial Life & Acc. Ins. Co.</u>, 277 So.2d 234, 235, 237 (La. App. 3d Cir. 1973).

[5]Because the issue was the inheritance of the insurance proceeds, the court did not address whether this limiting factor was valid.

7

was "[i]nsurance against bodily injury, disablement or death by accident." LA. REV. STAT. ANN. §22:6(2)(a).

Further, despite American Health, the Louisiana caselaw indicates that this policy is considered health and accident insurance. The Louisiana Supreme Court's opinion in Rudloff seems to compel this result, and the other cases support this conclusion, as well.[6] The district court correctly concluded that the policy was health and accident insurance.

Was Hardesty's death an accident?

With the issue of policy classification resolved, the district court ruled that Hardesty's death was not covered by the policy because neither of the two possible causes of death would be covered. The district court determined that if Hardesty's death was caused by his diseased liver's failure to metabolize the drugs, then the death was caused by illness, not by an accident. Alternatively, Hardesty's death was caused by taking Xanax beyond the prescribed levels. The court concluded that the policy excluded this cause of death, too. Based on this

---

[6] Fiffick also argues that the district court erred by refusing to determine whether the policy was individual or group insurance. Fiffick argues that this distinction is important because under LA. REV. STAT. ANN. § 22:170(B), an individual life insurance policy may not base liability on death being "caused in a certain specified manner." Fiffick makes no argument, however, about individual health and accident insurance. As the district court concluded, this distinction only matters if the policy is life insurance under Louisiana law. Because the district court correctly concluded that this policy was health and accident insurance, the court did not err in not deciding whether the policy was group or individual insurance.

8

reasoning, the district court granted American Bankers' summary judgment motion.

To establish coverage under the insurance policy, Fiffick must first establish that an "accident" was the predominant cause of Hardesty's death.[7]  See Murphy v. Continental Cas. Co., 269 So. 2d 507, 518 (La. App. 1st Cir. 1972).  Courts in Louisiana have provided several definitions for the term "accident."  The Louisiana Supreme Court held that the test for an accident "is whether the average man, under the existing facts and circumstances, would regard the loss so unforeseen, unexpected, and extraordinary that he would say it was an accident." Schonberg v. New York Life Ins. Co., 235 La. 461, 477, 104 So.2d 171, 177 (La. 1958) (quoting Preferred Accident Ins. Co. v. Clark, 144 F.2d 165, 167 (10th Cir. 1944)).  Louisiana courts have also defined an accident as "an immediate or traumatic incident inflicted upon a human body causing injury." Fruge v. First Continental Life & Accident Ins. Co., 430 So.2d 1072, 1075 (La. App. 4th Cir. 1983).  Examples of deaths that have been held to be death by "accident" or "accidental means" include anaphylactic shock from a blood transfusion,[8] a ruptured

_____

[7] Although the policy limits coverage to injuries resulting "directly and independently of all other causes" from an accident, identical policy language has been interpreted as requiring the accident only to be the "predominant cause" of the death.  See, e.g., Murphy v. Continental Cas. Co., 269 So. 2d 507, 518 (La. App. 1st Cir. 1972).

[8]Schonberg, 235 La. at 478, 104 So.2d at 177-78.

9

esophagus from eating a plum (even though the decedent previously had esophagus problems),[9] and a spider bite through which the decedent received a staph infection.[10]  Other causes of death have not been considered accidents, however.  For example, a heart attack – even one allegedly caused by work-related stress – was determined not to be an accident.  <u>Hebert v. Hughes Tool Co.</u>, 539 So.2d 789 (La. App. 3d Cir. 1989).  An aneurysm, too, was not an accident.  <u>Fruge v. First Cont'l Life & Accident Ins. Co.</u>, 430 So.2d 1072 (La. App. 4th Cir. 1983).  The U.S. District Court for the Eastern District of Louisiana, likewise, held that a heart attack suffered after working hard was not accident: "The decedent weighed 300 pounds; he had a history of heart disease; he worked 10 hours in very hot, cramped conditions, had an infarction and died ... the result would not seem unexpected nor unforeseen under the circumstances."  <u>Barnewold v. Life Ins. Co. of N. Am.</u>, 633 F. Supp. 432, 436 (E.D. La. 1986).

Fiffick describes Hardesty's accident as the unexpected interaction of prescription medicines.  She analogizes Hardesty's death to that in <u>Schonberg</u>, placing Hardesty's death in the line of cases holding that unexpected reactions to medicines, or

---

[9]<u>Murphy</u>, 269 So. 2d at 518.

[10] <u>Carnes v. Continental Cas. Co.</u>, 212 So. 2d 441 (La. App. 2d Cir. 1968).

10

medical procedures, are accidents.[11]  In particular, Fiffick argues that, according to the coroner, the liver disease caused an unexpected reaction to the medications and that this unexpected reaction caused his death.  Thus, Fiffick argues that Hardesty's death was an accident.

Fiffick further points to the coroner's testimony that liver disease alone did not cause Hardesty's death.  The evidence clearly indicates that Hardesty did not die from liver failure. According to the coroner, the liver disease only might have contributed to Hardesty's possible inability to metabolize Xanax.

An accident that exacerbates an underlying disease, which then results in death is an accident.  See Murphy, 269 So.2d at 518.  Courts do not appear to have addressed the situation where a disease renders an otherwise harmless combination of medicines toxic.  Yet, this sudden toxicity is consistent with the idea of an accident – an unexpected, unintentional result or a sudden trauma.  It is also consistent with Dodge, which holds that an allergic reaction to a drug is an accident.  Mutual Life Ins. Co. v. Dodge, 11 F.2d 486 (4th Cir. 1926).  Fiffick has presented evidence that, without taking the medications, Hardesty would not

---

[11]The cases she refers to for this proposition are Schonberg and two non-Louisiana cases that Schonberg cites, American National Insurance Co. of Galveston v. Blech, 100 F.2d 48, (4th Cir. 1938); Mutual Life Insurance Co. of New York v. Dodge, 11 F.2d 486 (4th Cir. 1926).  Dodge involves a reaction to novocaine, and Blech involves shock from an injection. Schonberg, 104 So.2d at 177.

11

have immediately died.  We conclude that there is a genuine issue of fact as to whether Hardesty's taking of the combination of drugs prior to his death constitutes an "accident" within the meaning of the policy, which renders the summary judgment by the trial court on this question inappropriate.

Assuming without deciding that the "polypharmacy"constitutes an accident, the burden would shift to American Bankers to prove that the policy excluded Hardesty's cause of death.  See Willis,287 So.2d at 645.  American Bankers points to two possible exclusions: illness and taking medications other than as prescribed.

To establish an illness exclusion, the insurer must prove that illness was "the predominant cause of death." Murphy, 269 So. 2d at  518.  In other words, once the beneficiary establishes that the death was an accident, the insurer bears the burden of showing that "without the injury, death would have occurred when it did due to illness or disease."  Id.  American Bankers has not produced the kind of evidence that would establish this exclusion.  In fact, the only evidence indicates that Hardesty did not, in fact, die from liver disease.

Likewise, American Bankers cannot establish that an overdose was the predominant cause of Hardesty's death.  The coroner testified that he was unable to determine which cause was more likely – the diseased liver's inability to metabolize a normal dose or an overdose of Xanax. The coroner's report and deposition

12

are the only causation evidence cited by either party.  It appears that, because American Bankers only relies on the coroner's evidence, it has failed to establish that it is entitled to summary judgment.  Yet Fiffick, too, has failed to establish her entitlement to summary judgment on liability.

Policy Termination

Fiffick also moved for summary judgment on American Bankers' defense that the policy had terminated before Hardesty died.  In its pleadings, American Bankers presented two explanations for this  termination: first, that Hardesty had failed to pay the premium and second, that Hardesty closed his account with Hibernia Bank.  The district court denied Fiffick's motion for summary judgment on these defenses.  We decline to reverse the district court's ruling.

Analyzing Fiffick's  motion as if it were American Bankers', the district court first concluded that a fact issue prevented it from finding that the policy terminated for nonpayment.  But as Fiffick points out, American Bankers did not move for summary judgment on this issue.  Only Fiffick's motion addressed this defense.  Regardless, a fact issue still exists: the claims administrator's affidavit, attached as evidence, indicates that Hardesty's last payment was on December 3, 2000 and that subsequent attempts to debit the account failed on January 3, 2001 and February 3, 2001.  This evidence is sufficient to defeat Fiffick's summary judgment motion. Thus, although the district

13

court might have incorrectly assigned the burden, the end result – a fact question about termination –  remains the same.

Similarly, American Bankers contends that Hardesty's closure of his Hibernia bank account terminated his policy.  Challenging this defense, Fiffick argues that under Louisiana law, individual life insurance policies cannot condition benefits on the insured's status at the time of his death.  LA. REV. STAT. ANN. §22:170(B).  Based on this statute, Fiffick contends that Hardesty's status as an account-holder must be irrelevant.  Section 22:170(B) does not apply to health and accident insurance, however, and thus the district court properly denied Fiffick's motion on this issue.  The defenses of non-payment and eligibility both remain for trial.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.